# IN THE UNITED STATES DISTRICT COURT FOR
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

STEPHANIE GASCA, *et al.*,           )
                                      )
       Plaintiff,               )
                                      )
v.                                    )     Case No. 17-CV-04149-SRB
                                      )
ANNE PRECYTHE, *et al.*,              )
                                      )
       Defendants.              )

## DEFENDANTS' REPLY
## TO PLAINTIFFS' OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

Defendants, through counsel, reply to Plaintiffs' Opposition to their Motion to Dismiss:

## I. Plaintiffs' Claims Are Mere Speculation.

Plaintiffs contend that they have provided more than adequately specific allegations to support their claims that they are being denied procedural rights in the parole revocation process. Plaintiffs, however, are still in the midst of their parole proceedings. Some have waived their rights and others are confused about the process they are undergoing. See Am. Compl., at ¶¶ 14-20, 93-153. In this context, any conclusion that rights have been, or are likely to be, denied can only be speculative.

## II. Plaintiffs Lack Standing with Regard to Claim of Failure to Provide Counsel.

Plaintiffs argue that it is unnecessary for them, at the initial pleading stage, to show any legal authority to establish that Defendants must provide counsel to alleged parole violators. But Plaintiffs miss the point. Defendants are not contending that the case should be dismissed because Plaintiffs failed to show the legal authority to support their claim. Rather, Defendants are stating that they have no legal authority to appoint counsel for indigent parolees, and in the absence of such authority, Plaintiffs do not have standing to bring their appointment of counsel claim. *See Balough v. Lombardi*, 816 F.3d 536, 543-44 (8th Cir. 2016) (cited in the motion to dismiss). Given Plaintiffs' lack of standing, this Court lacks subject matter jurisdiction, requiring dismissal of the claim.

Even if Plaintiffs' failure to show any legal authority of Defendants to provide appointed counsel was just a pleading issue, a showing of this authority to provide Plaintiffs' the relief requested at the pleading stage is necessary to the claim's validity. Asserting a right to relief without showing the legal basis for that right is not the same as asserting facts that may need factual development through further investigation and discovery. A showing of the legal basis

for a claim is necessary even at the pleading stage. As noted in Defendants' Motion to Dismiss, the standard required to avoid dismissal is to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Even though *facts* need only be asserted at this stage, the legal *claim to relief* based on those asserted facts must be established in the pleading. *See Taylor v. Randolph*, 594 Fed. Appx. 578, 580 (11th Cir. 2014) (dismissal appropriate "if complaint on its face fails to put forth . . . legal basis for the court to draw a reasonable inference that the defendant is liable"); *Prudential Ins. Co. v. Peters*, 2014 WL 12577027, at *1 (D. Neb. 2014) (cross-claim dismissed because it did "not allege any legal basis for affording a remedy"); *J. Lloyd Int'l, Inc. v. Super Wings Int'l, Ltd.*, 2010 WL 3359353, at *3 (N.D. Iowa 2010) (case dismissed because it failed to "set forth any clear legal basis for a claim"); *Green v. DOD Dependent Schools-Europe*, 514 F.Supp.2d 79, 82 (D.D.C. 2007) (case dismissed where plaintiff failed to plead any legal basis for his claims); *Conroy v. Chicago Police Dep't*, 2012 WL 12977469, at *1 (N.D. Ill. 2012) (complaint would not survive motion to dismiss because plaintiff submitted no legal authority to support his claim). Although Plaintiffs are allowed to assert facts that still need development throughout litigation, the Complaint must assert a legally valid basis for the claim before being allowed to proceed. Where no such basis is set out in the complaint, Plaintiffs do not plead a claim "plausible on its face" as required by *Twombly*.

Plaintiffs suggest that Defendants have the authority to provide legal counsel through their ability to make rules and enter into contracts. Opp. at 5. But a general power to make rules and enter contracts does not authorize agency officials to make rules giving them a power they do not possess or to enter into a contract to either (1) provide a service they are not authorized to provide or (2) to commit government funds for a purpose for which they have not been

appropriated. Plaintiffs cite court documents from *Hale v. Pate*, 694 Fed. Appx. 682 (11th Cir. 2017), a policy of an Iowa judicial district, and a newspaper article concerning an Illinois settlement as examples of how other state parole boards have figured out how to provide counsel to parolees. Opp. at 6. Not only are these items from other states with other laws not particularly relevant here, but the items do not identify what entity has the power to appoint counsel. In particular, the items cited give no indication that the parole authority itself can appoint counsel. For example, given that the Iowa policy provides that revocation is initiated by presentation of paperwork to a district judge, presumably it is the court that appoints lawyers when appropriate.

Plaintiffs cite *281 Care Committee v. Arneson*, 638 F.3d 621, 632-33 (8th Cir. 2011), for the proposition that an official need not "have the full power to redress a plaintiff's injury in order to have 'some connection' with the challenged" law or practice. Opp. at 6. The official at issue in that case, the state attorney general, had connections to the challenged law in that she could prosecute claims under that law upon request of local authorities, was responsible for defending decisions made under that law, and had the ability to pursue civil claims under that law. 638 F.3d at 633. Thus, the attorney general did have *some* authority to correct the legal violations asserted in the case. In contrast, Defendants have **no** authority in any circumstances to correct the alleged violation of failing to appoint counsel when appropriate. Thus, under *Balough*, 816 F.3d at 545-46, Plaintiffs lack standing in this case with regard to their appointment of counsel claim.

Plaintiffs' reliance on *Church v. Missouri*, 2017 WL 3383301 (W.D. Mo. 2017) *appeal pending*, is similarly misplaced. The defendant, Missouri's governor, was found by the court to have "some connection" with the challenge to the adequacy of representation of the state's public

4

defenders because, as governor, he was responsible for law enforcement; could direct the attorney general to file institute criminal actions; could reduce funds appropriated for public defenders; and appointed the members of the public defender commission. Id. at *15. Thus, as in *Arneson*, the defendant in *Church* was found to have some authority to have an impact on the challenged operation. But, again here, the Defendants have **no** authority in any circumstances to correct the alleged violation of failing to appoint counsel when appropriate, and Plaintiffs lack standing on this claim. *See Balough*, 816 F.3d at 545-46 (finding *Arneson* inapplicable because the defendant had no authority or obligation to enforcement of challenged statute).

Plaintiffs argue that, even if Defendants are without the authority to appoint counsel, it would still be appropriate equitable relief in this case to simply enjoin some or all Missouri Parole proceedings from moving forward. Opp. at 7. But such relief, especially in the absence of the presence of a party in the suit that could correct the violation found by the Court, would constitute a drastic interference with the important state interest of insuring that parolees abide by the terms of their release. Such a potential result enhances the propriety of abstention in this case, as further discussed in the motion to dismiss and below.

### III.     **Plaintiffs' Claims Are Barred by Judicial Immunity Under 42 U.S.C. § 1983.**

Plaintiffs assert that Defendants' argument that they are acting in a quasi-judicial capacity when making parole decisions is inconsistent with arguments made in other cases by Missouri Attorney General represented state officials that parole hearings are different than court proceedings. Opp. at 7-8. But there is no inconsistency. Parole hearings and court proceedings are different. But that does not mean that immunity under 42 U.S.C. § 1983 does not apply in both cases. Despite parole proceedings being different than court proceedings, "parole officials in deciding to grant, deny, or revoke parole, perform functions comparable to those of judges."

*Evans v. Dillahunty*, 711 F.2d 828, 830-31 (8th Cir. 1983). Even though *Evans* involved a claim for damages (and not for injunctive relief), it still establishes that officials making parole decisions are acting in a quasi-judicial capacity. Therefore, officials acting in such a capacity come within the term "judicial officers" as it is used in the immunity provision of § 1983, and are thereby covered by that immunity. *Gilmore v. Bostic*, 636 F. Supp.2d 496, 506 (S.D. W.Va. 2009); *Van Oss v. New York*, 783 F.Supp.2d 681, 694-95 (S.D.N.Y. 2011).

Plaintiffs implicitly challenge Defendants' reliance on these two decisions by remarking that they have not cited any case directly holding that Missouri officials making parole decisions are judicial officers under § 1983. Opp. at 8. Although *Gilmore* and *Van Oss* are from other jurisdictions, their reasoning is persuasive— that administrative officers making quasi-judicial decisions come within the protection of § 1983, which is further illuminated by the fact that Plaintiffs' Opposition fails to challenge that reasoning.

Cases cited by Plaintiffs are inapplicable. *Heartland Academy Community Church v. Waddle*, 427 F.3d 525, 531 (8th Cir. 2005), involves a juvenile officer removing children from a private boarding school after he received allegations of mistreatment. Directing the removal of children from a facility based on receipt of allegations of mistreatment is an administrative function, not the function of a judicial officer. In *Adams v. Agniel*, 405 F.3d 643, 645 (8th Cir. 2005), a prisoner sued to correct information in his parole file. The court affirmed dismissal of the claim based on their being no liberty interest in the possibility of parole. No question of immunity was addressed. Regardless, the keeping of files is an administrative function, and not similar to the act of a judge making a decision in a case.

### IV. **Claims for Injunctive and Declaratory Relief Fail Because Plaintiffs have an Adequate Remedy at Law.**

Plaintiffs again charge inconsistency between arguments made in this case and those

6

made in previous cases by state officials represented by the Attorney General's Office— this time with regard to the Parole Board's broad discretion in making parole determinations. Opp. at 9-10. Plaintiffs appear to misread Defendants' point. Parole officials do have very broad discretion in deciding whether to grant, deny, or revoke parole. But Plaintiffs' claims here involve not the parole decision itself, but the process provided by the Board in reaching that decision. Section 217.670.3, RSMo, sets out this distinction clearly: "The orders of the board shall not be reviewable except as to compliance with the terms of sections 217.650 to 217.810 or any rules promulgated pursuant to such section." The Board's orders on the merits, i.e., the grant, denial, or revocation of parole, are not reviewable under state law. But, as discussed in the motion to dismiss, compliance with Board rules, including those that provide for the very procedural protections that Plaintiffs assert are deficient, are explicitly reviewable under the statute. *Ladd v. Mo. Bd. of Probation and Parole*, 299 S.W.3d 33 (Mo. Ct. App. 2009), cited by Plaintiffs, is not to the contrary, because the issue in that case was the Parole Board's decision to deny parole. The decision is not inconsistent with judicial reviewability of compliance with the requirements of due process.

Plaintiffs assert that the appeal process under § 217.670.3, RSMo is inadequate to protect Plaintiffs' rights to due process in parole proceedings because that would require an "affirmative lawsuit", presumably meaning that the appeal would have to be filed in state court by means of a suit for review of the administrative action, and because such a suit "would occur long after the parole revocation process." Opp. at 10-11. The nature of the appeal as an administrative suit filed in court, as opposed to a notice of appeal, is a distinction without a difference. Either way the appeal occurs in a new forum. Further, the suit would occur no later after parole revocation process than any other appeal.

7

## V. *Younger* Abstention Calls for Dismissal of this Case.

Plaintiffs argue that two of the *Younger* abstention factors are absent in this case. First, they contend that, as executive-branch administrative proceedings, parole hearings "are not ongoing parallel court processes – much less ones that are part of the state criminal court system or akin to criminal proceedings." Opp. at 12. Application of *Younger* abstention, however, is not restricted to criminal matters. "The policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved." *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Plaintiffs do not deny that important state interests are involved in this case. Opp. at 11. Additionally, considering that the state legal proceedings at issue in *Middlesex* were proceedings before a state lawyer ethics committee (457 U.S. at 427-29), it is plain that *Younger* also applies to ongoing state legal proceedings that are not occurring in a court. *See also Hale v. Pate*, 694 Fed. Appx. 682, 684 (11th Cir. 2017) (*Younger* applied where plaintiff had not alleged that the administrative hearing at issue, to determine whether his conditional release should be revoked, had concluded).

With regard to Plaintiffs' reliance on *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005), Defendants do not dispute that that case does generally authorize challenges to the constitutionality of parole procedures applied at a parole hearing (as opposed to the denial of parole itself) under 42 U.S.C. § 1983. Defendants have not argued that Plaintiffs are barred, as a general matter, from filing this case under § 1983, as they would have if they were challenging the fact or duration of their confinement. *Wilkinson*, however, does not hold that defenses, such as the ones raised by Defendants in their motion to dismiss, are not available in § 1983 suits where parole procedures are challenged. Further, *Wilkinson* is not directly applicable to this case anyway because it involves denials of parole, while this one involves parole revocations.

8

Next, Plaintiffs assert that the third *Younger* factor—that the pending state proceedings provide an adequate opportunity for raising federal constitutional questions— is absent in this case. Opp. at 13. But as shown above, and in the motion to dismiss, Plaintiffs do have the opportunity to raise their constitutional issues concerning their ongoing parole proceedings through the appeal process of § 217.670.3, RSMo.

Plaintiffs challenge the § 217.670.3, RSMo appeal process as one that meets the *Younger* requirement that there be an adequate opportunity in the state court proceedings to raise federal constitutional questions on the grounds that the appeal under that statute requires a free-standing lawsuit and that it cannot provide timely relief. Opp. at 14. These challenges have already been addressed at the end of the previous section of this reply. Plaintiffs add the comment that an appeal by way of § 217.670.3, RSMo would be a collateral attack on the decision-making of the Parole Board. An administrative appeal, however, is not a collateral attack. See *Lederer v. Director of Div. of Aging*, 865 S.W.2d 682, 685 (Mo. Ct. App. W.D. 1993) (distinguishing administrative appeal from collateral attack).

Plaintiffs' reliance on *Gerstein v. Pugh*, 420 U.S. 103, 108 n.9 (1975) and *Rodriguez v. Providence Community Corrections, Inc.*, 155 F.Supp.3d 758, 765-66 (M.D. Tenn. 2015), is misplaced. In *Gerstein*, the federal court did not abstain from proceeding and issuing an injunction because the claim before it involved "an issue that could not be raised in defense of the [state] criminal prosecution." *Id*. As discussed above, Plaintiffs' issues in this case can be pursued in the state proceeding.

In *Rodriguez*, the federal court declined to abstain from proceeding with regard to the claim that alleged probation violators were being confined when they could not secure a bond even though no inquiry was being made into their ability to pay the bond. The court found this

9

Case 2:17-cv-04149-SRB   Document 49   Filed 12/13/17   Page 9 of 13

issue to be collateral to the ongoing state probation violation proceeding itself. *Id*. at 766. Unlike the issue in *Rodriguez*, the procedural protections for alleged parole violators at issue in this case, however, are not collateral to their ongoing parole proceedings. This is evident from *Parker v. Turner*, 626 F.2d 1 (6th Cir. 1980), a decision relied on by the *Rodriguez* court. In *Parker*, the court affirmed the district court's decision to abstain from taking on a claim that state courts were not providing due process protections (rights to counsel, to testify, to present and cross-examine witnesses) to fathers charged with contempt for failure to pay alimony and child support. *Id*. at 2. The appellate court concluded that the alleged procedural deficiencies in the state court contempt proceedings were not matters collateral to the underlying orders to pay alimony and child support. *Id*. at 8-9. The issues here, comparable to those raised in *Parker*, are also basic, not collateral, to the revocation proceedings being challenged. Abstention should be applied here, just as it was in *Parker*.

Plaintiffs next challenge Defendants' reliance on *Hale v. Pate*, 694 Fed. Appx. 682 (11th Cir. 2017). Plaintiffs contend that the situation in *Hale* is fundamentally different from the situation here in that Hale was collaterally attacking his sentence and seeking money damages as well. Opp. at 15. These factors are, however, extraneous. Hale's basic claim was that he was denied counsel at his conditional release revocation hearing based on a general practice of denying assistance of counsel to similarly situated inmates. 694 Fed. Appx. at 683. Hale could not have been challenging his sentence, because the court found that the revocation proceeding was still pending at the time he filed his federal suit and at the time the magistrate judge made his recommendation in the case. *Id*. at 684. Because the court affirmed the district court's decision to abstain from taking up claims comparable to those at issue here (see *id*. at 684), the *Hale* decision does support the application of abstention here.

Plaintiffs also challenge *Hale*'s applicability to this case because the court there stated that Hale had not claimed that he could not vindicate his claim that he was unconstitutionally denied counsel in state court. Opp. at 15. While Plaintiffs here do challenge their ability to vindicate their claims through the state revocation process, as Defendants have shown above, Plaintiffs can bring their due process claims in state court through their ability to appeal under § 217.670.3, RSMo.

Plaintiffs also provide documents from the *Hale* case, which they assert show that Hale received appropriate notice of the alleged conditional release violation; a clear and structured process to determine whether counsel should be appointed; and specific notice of his right to call witnesses, his right obtain subpoenas, and the state's obligation to present live witnesses. Opp. at 15-16. The rights available in Florida and the notice provided of those rights, however, are irrelevant to the question of abstention in this case. Even if Missouri's rights and notice were deficient, abstention is still appropriate because the abstention factors (pendency of state action, implication of important state interests, and adequate opportunity to raise federal constitutional questions in the state forum) still exist here. Regardless, as shown in the motion to dismiss, Missouri does provide constitutional process to alleged parole violators. See 14 CSR 80-4.010, 4.020, and 4.030.

Finally, Plaintiffs point out that the court in *Hale* affirmed the district court's decision to abstain on an abuse of discretion standard, not evaluating the question in the first instance. But this would be the case with respect to any appellate decision evaluating a district court's decision to grant or deny abstention.

WHEREFORE, for reasons discussed above and in their motion to dismiss, Plaintiffs' Complaint must be dismissed pursuant to Rules 12(b)(1) and (6).

Respectfully submitted,

**JOSHUA D. HAWLEY**
Attorney General

*/s/ Laura E. Elsbury*
Laura E. Elsbury, # 60854
Assistant Attorneys General
P.O. Box 899
Jefferson City, MO 65102
Phone: (573) 751-8795
Fax: (573) 751-9456
Email: Laura.Elsbury@ago.mo.gov


ATTORNEYS FOR DEFENDANTS ANNE PRECYTHE, KENNETH JONES, JENNIFER ZAMKUS, JIM WELLS, MARTIN RUCKER, ELLIS MCSWAIN, JR., DON RUZICKA AND GARY DUSENBERG

# **CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of December, 2017, I electronically filed the foregoing with the Clerk of the Court's ECF system, which was emailed to all counsel of record.

*/s/ Laura E. Elsbury*
Laura E. Elsbury
Assistant Attorney General