IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| STEPHANIE GASCA, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 17-cv-04149-SRB |
| ) | |
| ANNE PRECYTHE, Director of the Missouri, ) | |
| Department of Corrections, et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court is Defendants' Motion to Dismiss Amended Class Action Complaint. (Doc. #25). For the following reasons, the motion is DENIED.

I.  **Background**

This suit challenges the Missouri Department of Corrections ("MDOC") and its Division of Probation and Parole ("Parole Board") parole revocation practices. The named Plaintiffs are six parolees currently in the custody of MDOC. Each was taken into custody by parole officials for allegedly violating the terms of their parole, and their parole was revoked.

The named Plaintiffs, on behalf of the proposed class, allege "Defendants systematically fail to screen parolees to determine whether they are eligible for counsel [during the parole revocation proceedings,] at cost to the State, as required under *Gagnon v. Scarpelli*," 411 U.S. 778 (1973).[1]  (Doc. #23, p. 37). Plaintiffs allege Defendants "fail to appoint counsel to those

---

[1] While judges have great discretion when deciding whether to appoint counsel in parole revocation hearings, fundamental fairness requires the appointment of counsel when: (1) a parolee has requested counsel, (2) makes a timely and colorable claim that either she has not violated her parole or that substantial reasons justify or mitigate the violation of parole, and (3) the reasons underlying such a claim are complex or otherwise difficult to develop or present. If it is a close call, the judge should consider whether the parolee can effectively speak for herself. *Gagnon v. Scarpelli*, 411 U.S. 778, 786-90 (1973). While *Gagnon* dealt with revocation of probation, the Supreme Court expressly said there was no "difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation." *Id.* at 782.

parolees who do qualify." (Doc. #23, p. 37). Additionally, Plaintiffs allege, "Defendants . . . fail to ensure that parolees receive adequate notice of the rights to which they are entitled in the parole revocation process. As a result of Defendants' policies, practices, and customs, parolees are unable to speak on their own behalf, present evidence, and cross-examine witnesses." (Doc. #23, p. 37). Specifically, Plaintiffs allege Defendants regularly commit, *inter alia*, the following constitutional violations: failure to inform parolees of their rights (Doc. #23, ¶ 57) or next steps (Doc. #23, ¶ 59); failure to protect parolees' rights to be protected from an involuntary waiver of a preliminary or final hearing (Doc. #23, ¶¶ 57-60); failure to allow parolees to present witnesses and/or evidence at their hearing (Doc. #23, ¶¶ 64-66); failure to provide adequate notice of hearings to parolees (Doc. #23, ¶ 69); and failure to screen and subsequently provide counsel for those parolees who qualify under *Gagnon* (Doc. #23, ¶¶ 72-92).

Plaintiffs sue eight Defendants in their official capacity, including the Director of MDOC, the Chairman of the Parole Board, and Parole Board members. Two named Defendants are no longer members of the Parole Board. Plaintiffs request: (1) declaratory relief, "declaring that the policies, practices, and conduct described in this Complaint are in violation of Plaintiffs' rights and the class they represent under the Fourteenth Amendment . . . ," and (2) injunctive relief, "enjoin[ing] Defendants, their agents, employees, and all persons under their control from subjecting Plaintiffs and the class they represent from the unlawful policies, practices, and conduct described in this Complaint." (Doc. #23, p. 37). Plaintiffs also request attorney's fees and any other relief this Court deems appropriate. Defendants filed this motion to dismiss the amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for lack of subject matter jurisdiction under Rule 12(b)(1).

## II. Legal Standard

Dismissal under Rule 12(b)(6) is proper where the complaint fails to state a claim upon which relief can be granted. *Cook v. ACS State & Local Solutions, Inc.*, 663 F.3d 989, 992 (8th Cir. 2011). In ruling on a motion to dismiss, the "court accepts as true all factual allegations but is not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quotations omitted). The Court also construes all reasonable inferences in favor of the non-moving party. *Palmer v. Ill. Farmers Ins. Co.*, 666 F.3d 1081, 1083 (8th Cir. 2012). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A complaint with "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not survive a motion to dismiss under Rule 12(b)(6). *Id.* at 678. Both parties agree that the standards for assessing a motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction on the face of the complaint are the same as those applied to a Rule 12(b)(6) motion.

## III. Discussion

Defendants make eight arguments: (1) Plaintiffs' claims are mere speculation; (2) Plaintiffs lack standing with regard to their claim of failure to provide counsel; (3) Plaintiffs' claims are barred by judicial immunity; (4) Plaintiffs' claims for injunctive and declaratory relief fail because Plaintiffs have an adequate remedy at law; (5) Plaintiffs' claims should be dismissed under the *Younger* abstention doctrine; (6) the Eleventh Amendment bars any of Plaintiffs' claims for damages; (7) quasi-judicial immunity bars any of Plaintiffs' claims for damages; and (8) two Defendants are no longer state officials so Plaintiffs' claims against them should be dismissed.

### a. Mere Speculation

Defendants argue, "Plaintiffs' allegations that [D]efendants will fail to ensure [P]laintiffs are afforded appropriate process and that [P]laintiffs will be at risk for arbitrary and capricious processes relating to any future alleged parole violations . . . are nothing more than speculative accusations without a factual basis." (Doc. #25, p. 3). Defendants argue that Plaintiffs' Amended Complaint should be dismissed because "Plaintiffs offer no evidence that violations or revocation proceedings will occur in the future" and "more than 'bare accusations' must be made to escape a Motion to Dismiss." (Doc. #25, pp. 3-4).

In response, Plaintiffs argue there is nothing speculative about the assertions in this suit because "for each named Plaintiff[,] the Amended Complaint carefully sets forth the ways in which they personally are being negatively impacted by the standing policies and practices of MDOC's Parole Board . . . ." (Doc. #33, p. 6). Plaintiffs argue that Defendants "try to frame Plaintiffs' single-count civil rights complaint as focusing merely on potential future proceedings or revocation proceedings that will occur in the future." (Doc. #33, p. 7) (internal quotations omitted).

This Court agrees with Plaintiffs. Defendants' position overlooks "at least 150 additional paragraphs of detailed factual allegations – and the hundreds of pages of attached exhibits – relating to the named Plaintiffs . . . and the real and material harms they now suffer and will suffer into the future . . . ." (Doc. #33, p. 6). Additionally, Plaintiffs' Amended Complaint includes numerous factual allegations regarding *past* harms that undermine Defendants' contention that Plaintiffs' claims are "nothing more than speculative accusations without a factual basis." (Doc. #25, p. 3).

4

Even if the Amended Complaint did not include these past factual allegations, allegations of future harm do not necessarily deem an otherwise factually-sufficient complaint merely "bare accusations," unable to withstand a motion to dismiss. The Supreme Court has stated that future injury may satisfy the "injury-in-fact" requirement for Article III standing "if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 134 S.Ct. 2334, 2341 (2014) (internal quotations and citations omitted). This same principle surely must apply to the sufficiency of the factual pleadings. Otherwise, the Supreme Court's declaration that future injury may satisfy Article III in certain circumstances would never be realized. Once the individual Plaintiffs are on parole, this Court finds there is a substantial risk that future injury may occur, as required by *Susan B. Anthony List*, given Plaintiffs' histories of revocation and MDOC's past treatment of Plaintiffs. Therefore, this Court finds that both the past and future alleged harms put forth by Plaintiffs are more than "mere speculation."

Defendants also attack Plaintiffs' lack of evidence showing "that violations or revocation proceedings will occur in the future, much less [that those] proceedings [] would qualify as 'arbitrary and capricious processes.'" (Doc. #25, pp. 3-4). Evidence is neither required nor expected at the pleading stage. It has been long-settled that allegations as written are assumed to be true so long as they are plausible. *Twombly*, 550 U.S. at 556. Plaintiffs have met this threshold requirement. Thus, Plaintiffs' claims are not dismissed as mere speculation.

### b. Standing

Defendants argue that Plaintiffs lack standing to bring a claim of failure to provide counsel. To establish standing under Article III of the Constitution, a plaintiff must demonstrate: (1) injury-in-fact; (2) a causal connection between the alleged injury and the

conduct complained of (in other words, "the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court"); and (3) a likelihood that the alleged injury will not be redressed by a decision in plaintiff's favor. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations and citations omitted). This Court will address each of these requirements.

Defendants do not contend a lack of injury-in-fact at this stage. With respect to the second (fairly traceable injury) and third (redressability) elements, Defendants argue, "Plaintiffs have not asserted what legal authority Defendants possess that would permit them to provide counsel to alleged parole violators." (Doc. #25, p. 4). Thus, Defendants argue, Plaintiffs have not demonstrated the requisite "showing of the legal basis for [their] claim[s]." (Doc. #49, pp. 2-3). Defendants further argue, "In the absence of such authority, the injury alleged here is not 'fairly . . . trace[able]' to any action of the [D]efendants and there is no likelihood that the alleged injury can be redressed by a decision in [P]laintiffs' favor." (Doc. #25, p. 5). This Court disagrees that the alleged injury is not fairly traceable to any action of the Defendants.

To support their position, Defendants cite *Balogh v. Lombardi*, 816 F.3d 536, 542 (8th Cir. 2016). *Balogh*, relying on *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952 (8th Cir. 2015), found the plaintiff's injury not fairly traceable to the defendant because he did not possess any statutory authority to enforce the law at issue. *Id.* These cases are inapplicable. In *Digital Recognition Network* the plaintiffs (companies in the automatic license plate reader technology industry) brought suit against the Arkansas attorney general and governor, contending that the Arkansas Automatic License Plate Reader System Act ("Act") violated their First Amendment speech rights. 803 F.3d at 954-55. The Eighth Circuit found no Article III

6

case or controversy, reasoning that because the Act provides for enforcement *only* through private actions for damages, the attorney general and governor had no authority to enforce the Act and therefore did not cause injury to the plaintiffs. *Id.* at 958.

Such is not the case here. First, no statute or Parole Board practice limits the enforcement of these allegedly violated constitutional rights to a specific group or entity by, for example, providing exclusively for a private cause of action for damages. Second, in *Digital Recognition Network*, the Eighth Circuit noted it had previously found Article III standing where the state official had "some connection with the enforcement" of a state law or practice.[2] *Id.* at 957. Plaintiffs argue three connections between the Defendants in this case and the enforcement of a parolee's constitutional rights as guaranteed by Supreme Court precedent. Mo. Rev. Stat. §§ 217.035 (Director's Powers and Duties); 217.040 (Rulemaking Authority); 217.655 (Probation and Parole Board; General Duties).[3] Under Eighth Circuit precedent these connections are strong enough to satisfy the second element for Article III standing. *See 281 Care Cmte. v. Arneson*, 638 F.3d 621, 632-33 (8th Cir. 2011) (collecting Eighth Circuit cases).

Plaintiffs have also satisfied the third element (redressability) required to establish Article III standing. Defendants argue that because Plaintiffs do not point to any statute granting the MDOC and members of the Parole Board the direct authority to appoint counsel, there can be no redressability. This Court disagrees. Plaintiffs asks this Court to, *inter alia*:

> Adjudge and declare that the policies, practices, and conduct described in this Complaint are in violation of the rights of Plaintiffs and the class they represent under the Fourteenth Amendment of the United States Constitution; [p]reliminarily and permanently enjoin the Defendants, their agents, employees,

---

[2] "This court concluded in one case that where state officials had 'some connection with the enforcement' of a state law for purposes of the *Ex Parte Young* doctrine, then the case or controversy requirement of Article III was satisfied." *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 957 (8th Cir. 2015) (citing *Citizens for Equal Prot. v. Bruning,* 455 F.3d 859, 864 (8th Cir. 2006)).
[3] Plaintiffs erroneously cite to Mo. Rev. Stat. § 217.255 (Probation and Parole Board; General Duties). However, this section title is associated with § 217.655.

> and all persons under their control from subjecting Plaintiffs and the class they represent from the unlawful policies, practices, and conduct described in this Complaint . . . .

(Doc. #23, pp. 37-38). Plaintiffs need not identify a single statute granting Defendants authority to appoint counsel to establish redressability. In fact, "Plaintiffs need not show that a favorable decision will ensure redress; it is enough that a decision is *likely* to result in redress." *Church v. Missouri*, No. 17-cv-04057-NKL, 2017 WL 3383301, at *19 (W.D. Mo. July 24, 2017) (citing *Lujan*, 504 U.S. at 561) (internal quotations omitted) (emphasis added).

Because Plaintiffs have identified several provisions of Missouri law granting Defendants discretion to set policy and procedure related to parole revocation, it is likely that a judgment from this Court will result in redress. Even assuming Defendants do not have any authority to provide counsel, there are numerous possible paths of equitable relief that this Court could impose which would redress Plaintiffs' alleged injuries, including, but not limited to, those proposed by Plaintiffs in their response.[4] (Doc. #33, p. 11). Thus, Plaintiffs have established redressability as required by Article III. Because Plaintiffs have met all requirements for Article III standing, Plaintiffs have standing to bring this suit.

### c. Judicial Immunity

Defendants argue Plaintiffs' claims are barred by quasi-judicial immunity, a sub-doctrine of judicial immunity, because the "parole decision making process is a quasi-judicial process that brings those who make these decisions as part of their official duties within protections available to judges." (Doc. #25, p. 6). To support their position Defendants cite

---

[4] "Relatedly, possible paths of equitable relief here include this Court declaring that continued parole revocation proceedings without access to or presence of counsel for indigent defendants violate the constitution. Or, the Court could enjoin Missouri parole proceedings from moving forward where a right to appointed counsel is shown and none has been provided. This Court can also, as part of an equitable remedy scheme, order the Parole Board to stop affirmatively misinforming parolees about the right to counsel, banning attorney presence from preliminary hearings, and precluding lawyers from behaving as lawyers at final hearings." (Doc. #33, p. 11).

*Evans v. Dillahunty*, 711 F.2d 828, 830-31 (8th Cir. 1983), but that case is distinguishable from the present case. In *Evans* the plaintiff alleged that erroneous statements caused the parole board official to reject the parole panel's recommendation, which resulted in an extended sentence for plaintiff. *Id.* The Eighth Circuit noted that "in determining the type of immunity to be accorded to a particular official, courts should compare the officials['] functions with those of judges." *Id.* at 830. The Court blanketed the parole board official with immunity for review of the parole panel's recommendation and decision to deny parole because "[p]arole officials in deciding to grant, deny, or revoke parole, perform functions comparable to those of judges." *Id.* at 831. Here, however, the conduct challenged by Plaintiffs does not involve the "deci[sion] to grant, deny, or revoke parole." *Id.* Plaintiffs challenge Defendants' failure to provide counsel as required by the Supreme Court. This function is not comparable to that of a judge. Defendants did not provide any case law in their opening motion or reply supporting their assertion that parole board officials are entitled to quasi-judicial immunity when they allegedly deny constitutionally-guaranteed procedural rights. Accordingly, Defendants are not protected by quasi-judicial immunity.

### d. Adequate Remedy at Law

Defendants argue, "Plaintiffs' claims for injunctive relief fail because they cannot show an inadequate legal remedy." (Doc. #25, p. 6). Defendants argue that Plaintiffs should bring an appellate remedy under Mo. Stat. Rev. § 217.670.3, which provides for review of Parole Board orders "as to compliance with the terms of sections 217.650 to 217.810 or any rules promulgated pursuant to each section." (Doc. #25, p. 7) (citing Mo. Stat. Rev. § 217.670.3). Specifically, Defendants argue that "[t]he types of violations asserted in this case here – parolee's rights to speak in her own behalf, present evidence, and cross-examine adverse

9

witnesses – are the procedural due process matters that can be reviewed under this standard." (Doc. #25, p. 7). Plaintiffs argue that Mo. Stat. Rev. § 217.670.3—by its terms—only allows for a limited review. Mo. Stat. Rev. § 217.670.3 ("The orders of the [Parole] Board shall not be reviewable *except* as to compliance with the terms of sections 217.650 to 217.810 or any rules promulgated pursuant to such section.") (emphasis added).

Lack of an adequate legal remedy is an indispensable prerequisite to equitable relief. *Birch v. Mazander*, 678 F.2d 754, 756 (8th Cir. 1989). Here, Plaintiffs demonstrate a lack of an adequate legal remedy. Contrary to Defendants' implication that Plaintiffs could seek appellate remedies under Missouri law for all their violations, Plaintiffs allege more than just a violation of "a parolee's rights to speak in her own behalf, present evidence, and cross-examine adverse witnesses." (Doc. #25, p. 7). Instead, Plaintiffs complain of federal constitutional deficiencies and violations, namely the refusal to provide counsel when required by Supreme Court precedent. Because such violations are not fit for review under the Missouri statute, this Court finds no adequate remedy at law for Plaintiffs' allegations.

Defendants also argue Plaintiffs' request for declaratory relief fails. While declaratory relief is discretionary, "an important factor in exercising that discretion is whether the declaratory judgment plaintiff has another, more appropriate remedy." *Glover v. State Farm Fire & Casualty Co.*, 984 F.2d 259, 261 (8th Cir. 1993). Defendants assert, "[a]n appeal [under § 217.670.3] by parolees who claim they were denied rights during the revocation process would allow the court in each such appeal to assess the unique circumstances of the particular process followed in the particular revocation at issue." (Doc. #25, p. 7). Because Plaintiffs cannot bring their right to counsel claim under the Missouri statute, this Court finds Plaintiffs do not have another, more appropriate remedy.

10

### e. *Younger* Abstention

Defendants argue this Court should abstain from exercising jurisdiction under *Younger* abstention doctrine. *Younger v. Harris*, 401 U.S. 37 (1971). *Younger* abstention doctrine applies "only if state proceedings: (1) are pending at the time of the federal action; (2) implicate important state interests; and (3) provide an adequate opportunity for raising federal constitutional questions." *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). All three factors must be present for this Court to abstain. Defendants argue abstention is appropriate here because: (1) "the parole proceedings plaintiffs allege in their complaint are pending;" (2) "this case implicates an important state interest – ensuring prisoners released from incarceration subject to certain terms of release abide by those terms;" and (3) "plaintiffs here have an adequate opportunity to raise their federal procedural due process issues by review under § 217.670.3." (Doc. #25, pp. 8-9). Plaintiffs do not challenge the presence of the second factor in this case. Plaintiffs argue that the other two *Younger* factors are "entirely absent here." (Doc. #33, p. 16).

This Court begins with the third factor. "[T]he plaintiff has the burden to show that the state proceeding will not provide him an adequate remedy for his federal claim." *Hale v. Pate*, 694 Fed. Appx. 682, 684 (11th Cir. 2017). "A plaintiff has an adequate remedy for his constitutional claim . . . if he can raise his constitutional claim during the state court's review of an administrative proceeding." *Id.* (internal citations omitted). This Court finds Plaintiffs satisfied their burden. Simply put, § 217.670.3 does not allow for adequate review of Plaintiffs' complaints regarding failure to provide counsel because such a practice is not permitted to be reviewed under § 217.670.3, as explained above. Because all three factors must be present to

11

apply *Younger* abstention, this Court does not find it necessary to address whether the first factor is present in the instant case.

To support its position, Defendants cite to *Hale v. Pate*, 694 Fed. Appx. 682 (11th Cir. 2017), which is not binding on this Court. Regardless, the case is also inapposite to the present case. Critically, plaintiff Hale brought a 42 U.S.C. § 1983 action, alleging both a violation of his Sixth Amendment right to counsel during his revocation hearing *and* the imposition of an illegal sentence on him upon revocation of his conditional release. *Id.* at 683. In the present case Plaintiffs *do not* collaterally attack their sentences; rather, their § 1983 claims are limited to certain procedural and substantive violations committed during their parole revocation hearings. This distinction is important because "a § 1983 action will not lie when a state prisoner challenges 'the fact or duration of his confinement,' and seeks either 'immediate release from prison,' or the 'shortening' of his term of confinement." *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005) (internal citations omitted). For this reason this Court is persuaded that the analysis in *Hale*, even though framed in abstention doctrine, is inapplicable to the present case. Additionally, unlike here, plaintiff Hale did "not claim[] that he would be unable to vindicate his claims that he is improperly incarcerated or that he did not receive the counsel that he merited in a state court forum." *Hale*, 694 Fed. Appx. at 684. Plaintiffs have demonstrated why the limited review provided under § 217.670.3 is insufficient. For the reasons stated above, the Court declines to exercise *Younger* abstention.

### f. Eleventh Amendment and Damages

Defendants argue that the Eleventh Amendment bars suits for damages against state officials in their official capacities. This Court agrees. However, here, Plaintiffs do not ask for damages. Instead, they request injunctive and declaratory relief. While Plaintiffs seek any

12

other relief the Court deems proper, they have confirmed in their response that they are not seeking any money damages. (Doc. #33, p. 20). Therefore, the Court disposes of Defendants' argument as moot.

### g. Quasi-Judicial Immunity and Damages

Because Plaintiffs are not seeking any damages in this case, as stated in § f, Defendants' argument that quasi-judicial immunity bars any claims for damages is moot.

### h. Defendants No Longer Serving as State Officials

Defendants argue that because Plaintiffs sue two Defendants (Mr. Ruzucka and Mr. McSwain) only in their official capacity and these Defendants "are no longer members of the Parole Board[,] the claims against them should be dismissed." (Doc. #25, p. 10). This argument misunderstands the operation of Rule 25(d), which states:

> An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution.

Fed. R. Civ. P. 25(d). Because substitution is automatic, Mr. Paul Fitzwater, Mr. Ruzucka's successor, is substituted for Mr. Ruzicka. When a replacement is appointed for Mr. McSwain, the successor's name will be substituted automatically as well.

Case 2:17-cv-04149-SRB   Document 50   Filed 12/15/17   Page 13 of 14

## IV. Conclusion

Accordingly, Defendants' Motion to Dismiss Amended Class Action Complaint (Doc. #25) is **DENIED**. Further, the Clerk of the Court is directed to substitute Mr. Paul Fitzwater for Mr. Ruzicka.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
JUDGE STEPHEN R. BOUGH
UNITED STATES DISTRICT COURT

DATED: December 15, 2017