# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

| | | |
|---|---|---|
| STEPHANIE GASCA, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 17-cv-04149 |
| | ) | |
| ANNE PRECYTHE, et al., | ) | **Oral Argument Requested** |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO DISMISS AS MOOT AND FOR FAILURE TO JOIN AN INDISPENSABLE PARTY

Defendants Anne Precythe, et al. ("Defendants"), move to dismiss the amended complaint

as moot and for failure to join an indispensable party under Fed. R. Civ. P. 19.

## Table of Contents

Summary of the Argument ............................................................................................................4

Statement of Facts .......................................................................................................................4

Argument ....................................................................................................................................6

I.   Claims Against Defendants Should Be Dismissed as Moot Because Defendants Have Taken Voluntary Action to Address Alleged Violations of the Constitution ....................6

   A.   Alleged parole violators are provided adequate notice of alleged violations ...............8

   B.   Alleged parole violators are advised of their rights during the revocation proceedings ...................................................................................................................................9

   C.   Alleged parole violators are appropriately screened to determine if they qualify for a public defender ........................................................................................................9

   D.   Waivers of preliminary and revocation hearings by alleged parole violators are knowing, voluntary, and intelligent ..........................................................................11

   E.   Alleged parole violators are provided the opportunity to present written evidence and witnesses and to confront adverse witnesses ...........................................................12

1

II.     The Amended Complaint Should Be Dismissed for Failure to Join an Indispensable Party Because the Court Cannot Accord Complete Relief in the Absence of the Missouri Public Defender Commission ...........................................................13

        A.  Standard for Failure to Join an Indispensable Party  ...............................14

        B.  Complete Relief Cannot Be Afforded Without the Commission  ...........................14

        C.  Granting the Relief Requested Would Leave Defendants Subject to a Substantial Risk of Incurring Double, Multiple, or Otherwise Inconsistent Obligations ..........16

Conclusion  ........................................................................................17

## Table of Authorities

**Cases**

*Ashley v. U.S. Dep't of Interior*,
    408 F.3d 997 (8th Cir. 2005)................................................................. 15

*Com. ex rel. Patterson v. Penn. Bd. of Prob. & Parole*,
    258 A.2d 693 (Pa. 1969) ....................................................................... 17

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ................................................................................ 7

*Gagnon v. Scarpelli*,
    411 U.S. 778 (1973) ............................................................................ 9, 10

*Genesis Healthcare Corp. v. Symczyk*,
    569 U.S. 66 (2013) ................................................................................ 6, 7

*Kennedy Bldg. Assocs. v. Viacom, Inc.*,
    375 F.3d 731 (8th Cir. 2004).................................................................... 8

*Lewis v. Continental Bank Corp.*,
    494 U.S. 472 (1990) ................................................................................ 7

*Moore v. Ashland Oil, Inc.*,
    901 F.2d 1445 (7th Cir.1990)................................................................. 14

*Morrissey v. Brewer*,
    408 U.S. 471 (1972) ....................................................................... 6, 8, 9, 12

*N.Y. Cty. Lawyers' Ass'n v. State*,
    745 N.Y.S.2d 376 (N.Y. Sup. Ct. 2002) ................................................ 17

*Osborn v. United States*,
    918 F.2d 724 (8th Cir.1990)..................................................................... 7

Case 2:17-cv-04149-SRB   Document 194   Filed 11/01/19   Page 2 of 18

*Ozark Soc'y v. Melcher*,
  248 F. Supp. 2d 810 (E.D. Ark. 2003) ...................................................................... 8

*Richmond v. Dist. Court of Md.*,
  990 A.2d 549 (Md. 2010).................................................................................. 17

*Schweyer Imp.-Schnittholz GmbH v. Genesis Capital Fund, L.P.*,
  220 F.R.D. 582 (S.D. Iowa 2004) ................................................................. 13, 14

*State ex rel. Mo. Pub. Def. Comm'n v. Pratte*,
  298 S.W.3d 870 (Mo. 2009)............................................................................. 15

*State ex rel. Robinson v. Franklin*,
  48 S.W.3d 64 (Mo. App. W.D. 2001) ............................................................... 15

*Two Shields v. Wilkinson*,
  790 F.3d 791 (8th Cir. 2015)........................................................................... 15

*United States v. W.T. Grant Co.*,
  345 U.S. 629 (1953) ........................................................................................ 8

*United States v. Jones*,
  770 F.3d 710 (8th Cir. 2014)........................................................................... 11

*United States v. Taylor*,
  747 F.3d 516.................................................................................................. 11

*Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*,
  454 U.S. 464 (1982) ........................................................................................ 6

## Statutes

Mo. Const. Art. III, § 2.................................................................................... 6

§ 600.042.4(5), RSMo .............................................................................. 4, 6, 15

## Rules

Fed. R. Civ. P. 12(b)(1).................................................................................. 7

Fed. R. Civ. P. 12(b)(7).................................................................................. 13

Fed. R. Civ. P. 19................................................................................. 4, 14, 15

## Regulations

18 CSR 10-2.010(1)(C) and (E)............................................................... 4, 6, 15

3

## Summary of the Argument

Defendants have voluntarily done all they can to resolve Plaintiffs' complaints and provide policies and procedures above and beyond what is constitutionally required for parole revocation hearings. Indeed, Defendants have worked cooperatively and expeditiously to implement new processes for, among other things, screening and referring matters for representation. As such, the claims against Defendants should be dismissed as moot.

Plaintiffs, however, make additional allegations that Defendants have no authority to resolve. They allege their rights have been constitutionally denied because the "vast majority of parolees in the State of Missouri need and are entitled to appointed counsel to help them navigate these arcane proceedings" and "Defendants uniformly refuse to provide attorneys to parolees at any point in the parole revocation process." Am. Compl. at ¶¶ 7 and 10. Defendants do not have authority to provide or appoint attorneys for indigent parolees. That authority rests with the Missouri Public Defender Commission ("Commission"). *See* § 600.042.4(5), RSMo; 18 CSR 10-2.010(1)(C) and (E). It is the Commission that has refused to provide or appoint attorneys. As such, in the absence of the Commission, "the court cannot accord complete relief among existing parties" and granting the Plaintiffs' requested relief would "leave [the Defendants] subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." *See* Rule 19(a)(1)(A). As Plaintiffs have never sought to join the Commission (although they easily could), the case should be dismissed.

## Statement of Facts

In the amended complaint, Plaintiffs assert systemic due process violations with regard to parole revocation proceedings. Their primary claim appears to be that alleged parole violators are not provided with appointed counsel to assist them in parole proceedings in circumstances when

4

that assistance is constitutionally required. Am. Compl. at ¶¶ 74-92. Plaintiffs also assert

Missouri's parole revocation system does not comply with due process because it does not:

(1) screen to determine if they are qualified for State-funded counsel;

(2) provide adequate notice of alleged parole violations;

(3) advise alleged parole violators of their rights during revocation proceedings;

(4) obtain waivers of preliminary hearings and revocation hearings that are knowing, voluntary, and intelligent; or

(5) provide the opportunity to present written evidence and witnesses or to confront adverse witnesses at both the preliminary hearing and revocation hearing.

Am. Compl. at ¶¶ 48, 79. The Court granted summary judgment based on Defendants' concession

that "the policies that existed at the time Plaintiffs filed their Amended Class Action complaint did

not satisfy [Due Process requirements]." Doc. No. 146, p. 1. The Court also noted Defendants

had taken "substantial corrective measures to remedy these shortcomings." *Id.*

Defendants have now completed their revisions of policies regarding parole revocation

proceedings. *See* Exhibits A-M. Among the many provisions, Missouri's new policies require

alleged parole violators be informed of their right to request appointment of counsel and they are

provided a copy of the notice of rights. *See* Procedure No. P3-8.2, III.B.2.b (Exhibit B, at p. 3);

Exhibit C. When counsel is requested, an eligibility screening instrument is used. Procedure No.

P3-8.2, III.B.4 (Exhibit B, at p. 3); Exhibit D. The application is then faxed to the public defender's

office. *See* Exhibit D, p. 2 (last line); Procedure No. P3-8.2, III.B.5.b (Exhibit B, at p. 3).

Defendants are following these policies and procedures, including the tendering of

applications to the public defender's office. *See* Exhibit N. Unfortunately, the Commission

refuses to appoint counsel. *See* Exhibit O-R.

**Argument**

Although "the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations," *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972), Defendants have voluntarily implemented new policies and procedure that go above and beyond constitutional requirements. These include: (1) providing appropriate notice of alleged parole violations; (2) advising alleged parole violators of their rights during the revocation process; (3) screening alleged parole violators for appointment of counsel; (4) providing for knowing, voluntary, and intelligent waiver of preliminary and revocation hearings; and (5) providing alleged parole violators the opportunity to present evidence and witnesses and to confront adverse witnesses at hearings. Accordingly, Plaintiffs' claims against Defendants should be dismissed as moot.

Despite these voluntary efforts, Defendants are unable to accord Plaintiffs the complete relief they seek because the Commission, not Defendants, has the authority and obligation to appoint attorneys for indigent alleged parole violators. *See* § 600.042.4(5), RSMo; 18 CSR 10-2.010(1)(C) and (E). But the Commission refuses to do so. And Plaintiffs have not sought to join the Commission in this action. Plaintiffs' amended complaint, therefore, should be dismissed for failure to join an indispensable party.

**I.     Claims Against Defendants Should Be Dismissed as Moot Because Defendants Have Taken Voluntary Action to Address Alleged Violations of the Constitution.**

"Article III, § 2, of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies,' which restricts the authority of federal courts to resolving 'the legal rights of litigants in actual controversies.' " *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982)). "This requirement ensures that the Federal Judiciary confines itself to

6

its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved." *Id.*

Here, Defendants move to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), on grounds of mootness. On a motion to dismiss under Rule 12(b)(1), a defendant may assert a "facial attack" or a "factual attack." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). When the motion relies on matters outside the pleadings, a court construes the motion as a factual attack and may weigh the evidence, and satisfy itself as to the existence of its power to hear the case. *Id.* at 730. Under a factual attack analysis, the non-moving party does not have the benefit of 12(b)(6) safeguards. *Id.* at 729 n.6. "In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Id.* at 730.

"A corollary" to the case-or-controversy requirement of Article III, § 2 is that "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Genesis Healthcare Corp.*, 569 U.S. at 71-72. Indeed, "[i]f an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Id.* (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–78 (1990)). Defendants' voluntary actions adopting and implementing policies and procedures has rendered Plaintiffs' claims moot.

A case might become moot by a defendant's voluntary conduct "if subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). And in order for behavior to be reasonably expected to recur, there "must be some 'cognizable danger of

recurrent violation, something more than the mere possibility which serves to keep the case alive.' " *Ozark Soc'y v. Melcher*, 248 F. Supp. 2d 810, 817 (E.D. Ark. 2003) (quoting *U.S. v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Merely "entering an administrative agreement to do something in the future" is not the same "as having already done the thing for purposes of mootness analysis." *Kennedy Bldg. Assocs. v. Viacom, Inc.*, 375 F.3d 731, 746 (8th Cir. 2004).

In this case, Defendants have not simply entered into an agreement or stated they would do something in the future. They have actually implemented new policies and procedures as described below. It is absolutely clear the alleged wrongful behavior cannot reasonably be expected to recur. As such, the Plaintiffs' claims against Defendants should be dismissed as moot.

### A. Alleged parole violators are provided adequate notice of alleged violations.

Before the preliminary parole revocation hearing, alleged parole violators must receive notice of the parole violations that have been alleged. *Morrissey*, 408 U.S. at 487. And before the final revocation hearing, they must receive written notification of the claimed violations and the evidence supporting the claimed violations must be disclosed. *Id.* at 489.

Missouri's new policies provide that alleged parole violators are to be advised of the specific parole violations they are charged with at their violation interviews. Procedure No. P3-8.2, III.B.7. (Exhibit B, at p. 3). They are also to be provided with a copy of the violation report setting out their alleged violations at their violation interviews. Procedure No. P3-9.1,III.A.2 (Exhibit H, at p. 3); Procedure No. P3-8.1,III.G.1.a (Exhibit A, at p. 8). The violation report describes the particulars of the charged violations. Procedure No. P3-8.3,III.B.1.b (Exhibit F, at pp. 10-11). These particulars include the date, time, place, and basis of any arrest on a new charge and identification of outside sources of information. Procedure No. P3-8.3,III.B.1.b.1 and 5) (Exhibit F, at 10 & 11). The parole officer conducting the preliminary hearing is required to state

if the alleged parole violator acknowledged receipt of the violation report before the preliminary hearing.  Procedure No. P3-9.3,III.D.1.d (Exhibit I, at p. 2).

These policies establish that alleged parole violators receive notice of the parole violations they are alleged to have committed, and of the evidence supporting the violations, before the preliminary hearing.  The policies comply with the standards set out in *Morrissey* regarding notice of alleged parole violations and supporting evidence.

### B.    Alleged parole violators are advised of their rights during the revocation proceedings.

*Morrissey* and *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), also establish specific rights available to alleged parole violators during the revocation process, including rights to notice of certain specific things.  Neither case, however, establishes a freestanding right to receive a notice of the rights generally available during the revocation process.  Even if there were such a general right, Missouri's new policies provide such notice.  Alleged parole violators are provided a copy of the notice of rights during the revocation process at their violation interview.  Procedure No. P3-8.2, III.B.2.b (Exhibit B, at p. 3); Notice of Rights During the Revocation Process (Exhibit C).

### C.    Alleged parole violators are appropriately screened to determine if they qualify for a public defender.

Whether due process requires the appointment of counsel in the parole revocation process is a question to be answered "on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the . . . parole system."  *Gagnon*, 411 U.S. at 790.  The appointment of counsel "will probably be both undesirable and constitutionally unnecessary in most revocation hearings" but "there will remain certain cases in which fundamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent . . . parolees."  *Id*.  The agency responsible for making the parole decision is entitled to "considerable discretion" in determining whether counsel should be

9

appointed to represent the parolee.  *Id.*  Although precise and detailed guidelines for when the appointment of counsel is necessary to comply with due process are not possible,

> it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the . . . parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present.

*Id.*  The alleged parole violators' ability to speak effectively for themselves should also be considered.  *Id.* at 790-91.  When appointment of counsel is denied, the grounds "should be stated succinctly in the record."  *Id.*

Under Missouri's new policies and procedures, when counsel is requested, the parole officer will use the counsel eligibility screening instrument to determine whether they are eligible for appointment of counsel.  Procedure No. P3-8.2, III.B.4 (Exhibit B, at p. 3); Exhibit D.  The screening instrument asks the alleged parole violators about their education and other potential reasons that could affect their ability to speak for themselves.  *See* Exhibit D, questions 2-6.  It also asks whether they are contesting the alleged parole violation(s) and allows them to discuss mitigating circumstances and other grounds making revocation inappropriate.  *See* Exhibit D, questions 1 and 7.  Based on this information, the parole officer is then to determine whether the issues to be adjudicated during the revocation process are complex or the mitigating circumstances are substantial, and whether the alleged parole violator is incompetent to proceed on his or her own. *See* Exhibit D, questions 7e and 8.  If either answer is yes, the parole officer is to have the alleged parole violator complete a public defender application.  *Id.*  The parole officer is to assist in completing this application.  *See* Procedure No. P3-8.2, III.B.5.a (Exhibit B, at p. 3).  The application is then faxed to the public defender's office.  *See* Exhibit D, p. 2 (last line); Procedure

10

No. P3-8.2, III.B.5.b (Exhibit B, at p. 3). These provisions provide alleged parole violators with appropriate screening to determine if they qualify for a public defender.

> **D.** **Waivers of preliminary and revocation hearings by alleged parole violators are knowing, voluntary, and intelligent.**

In the context of revocation of supervised release by a federal court, a defendant has the right to a revocation hearing. *See United States v. Taylor*, 747 F.3d 516. 519 (8th Cir. 2014). That right to a hearing may be waived, "but to be effective a waiver must be knowingly and voluntarily made." *Id.* In determining whether such a waiver is knowing and voluntary, there are no particular requirements that must be met; rather the totality of the circumstances is to be examined, with particular attention paid to the defendant's understanding of the right to be waived and how it might be waived. *United States v. Jones*, 770 F.3d 710, 712 (8th Cir. 2014). Assuming these principles apply to waivers of state parole hearings, Missouri's new policies provide that waivers of parole hearings will be knowing and voluntary.

During the violation interview, the parole officer is required to explain the notice of rights during the revocation process form (Exhibit C) and obtain the alleged parole violator's signature on that document. Procedure No. P3-8.7,III.C.4.a.3 (Exhibit G, at p. 4). This notice of rights during the revocation process form (Exhibit C) explains the parole revocation process and sets out the rights of alleged parole violators during this process. The parole officer is also to read to alleged parole violators from the request for waiver of preliminary hearing form. Procedure No. P3-8.7,III.C.4.a.4 (Exhibit G, at p. 4). This request for waiver of preliminary hearing form (Exhibit E) reminds alleged parole violators of their right to a preliminary hearing and of the right to counsel, including the right to appointment of counsel for those eligible, and provides spaces for the parole officer to mark either the alleged parole violator requests a preliminary hearing or waives such a hearing and for the alleged parole violator to initial his or her choice.

11

During the violation interview, the parole officer also reads to the alleged parole violator from the request for waiver of revocation hearing form. Procedure No. P6-8.1,III.B.3.d (Exhibit K, p.7); Exhibit L. This form is to be completed by noting whether the alleged parole violator requests or waives the revocation hearing and having the alleged parole violator initial his or her choice. Exhibit L. This form also provides for the alleged parole violator to sign to acknowledge his or her receipt of the notice of rights form. Exhibit L.

These policies establish that the parole revocation process is explained to alleged parole violators and they are informed of their rights during this process, including the right to counsel (and appointed counsel if eligible) before being asked to decide whether they wish to waive either the preliminary hearing, the final hearing, or both. They are also asked to initial their choice. In the totality of these circumstances, if an alleged parole violator chooses to waive one or both hearings, that waiver will have been knowing and voluntary.

## E. Alleged parole violators are provided the opportunity to present written evidence and witnesses and to confront adverse witnesses.

Due process also requires that alleged parole violators be permitted to present written evidence and witnesses at both the preliminary and final revocation hearings. *Morrissey*, 408 U.S. at 487 & 489. Due process requires they be given the opportunity to confront and cross-examine adverse witnesses at both the preliminary and final revocation hearings, unless the hearing officer finds good cause not to allow this.[1] *Id.*

---

[1] Plaintiffs allege some preliminary hearings are conducted by parole officers assigned to the alleged parole violators' case and may be the only witness to an underlying violation. Am. Compl., at ¶ 65. Thus, Plaintiffs may be asserting decisions at the preliminary hearing are not made by an independent decision maker, as required by *Morrissey*. 408 U.S. at 487. If that is the case, Missouri's new policies and procedures provide "[t]he hearing officer must be a supervisor but cannot be the immediate supervisor of the officer who prepared the [violation report], nor any supervisor having been involved in decision-making, problem-solving, or investigation regarding the violation(s) in question." Procedure No. P3-9.1,III.C.3 (Exhibit H, at p. 5). Further, if "all supervisors in a district office have been involved with the violation(s) in question, it is the

Missouri's new policies and procedures ensure alleged parole violators may present documents and other evidence at both the preliminary and final revocation hearings. Procedure No. P3-9.4, III.B.2.a (Exhibit J, at p. 3); Procedure No. P6-8.2,III.B.2.a (Exhibit M, at p. 3). They are also guaranteed the opportunity to confront and cross-examine adverse witnesses at both stages of the revocation process, except in extreme cases in which the hearing officer determines the adverse witness would be susceptible to risk or harm, or if potential problems with future prosecutions would result. Procedure No. P3-9.4, III.B.3.a and b (Exhibit J, at p. 3); Procedure No. P6-8.2,III.B.3.a & b (Exhibit M, at p. 3).

Furthermore, Missouri's new policies and procedures provide that alleged parole violators may present their own testimony at the preliminary hearing. Procedure No. P3-9.4,III.D.4 (Exhibit J, at p. 5). They may also present their own testimony at the final revocation hearing. Procedure No. P6-8.2,III.D.4 (Exhibit M, at p. 5). They are also given notice of all these rights. Notice of Rights During the Revocation Process (Exhibit C, p. 2, § III, 3rd bullet point).

## II.     The Amended Complaint Should Be Dismissed for Failure to Join an Indispensable Party Because the Court Cannot Accord Complete Relief in the Absence of the Missouri Public Defender Commission.

Federal Rule of Civil Procedure 12(b)(7) provides for dismissal of a suit if the plaintiff fails to join an indispensable party under Rule 19. Fed. R. Civ. P. 12(b)(7). "The proponent of a motion to dismiss under Fed. R. Civ. P. 12(b)(7) has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." *Schweyer Imp.-Schnittholz GmbH v. Genesis Capital Fund, L.P.*, 220 F.R.D. 582, 585 (S.D. Iowa 2004). This burden can be satisfied by "extra-pleading evidence." *Id.*

The amended complaint alleges constitutional violations based on the failure to appoint

---

responsibility of the [Chief Administrative Officer]/designee to locate a hearing officer to conduct the hearing." *Id.* Thus, hearings for alleged parole violators are before a neutral decision-maker.

counsel for indigent alleged parole violators. Defendants do not have that authority. Instead, by law that is the obligation of the Commission, which has refused to appoint public defenders when specifically requested. *See* Exhibits N-R. As such, the Commission is a necessary and indispensable party – a party Plaintiffs have never sought to join despite knowing that the Commission, not Defendants, is authorized to appoint counsel for Plaintiffs. The case should, therefore, be dismissed for failure to join an indispensable party under Rule 19.

### A.      Standard for Failure to Join an Indispensable Party.

"The purpose of Federal Rule of Civil Procedure 19 is to permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources." *Moore v. Ashland Oil, Inc.*, 901 F.2d 1445, 1447 (7th Cir.1990). "The Court must first determine whether the presence of a party is essential to the litigants' complete relief, or when the party to be joined must be present to protect its own or another party's interests." *Schweyer Imp.-Schnittholz GmbH*, 220 F.R.D. at 585. A party is a necessary party under Rule 19(a) if it meets either the criteria under Rule 19(a)(1) or Rule 19(a)(2). "The criteria under Rule 19(a)(1) focuses on whether relief can be afforded the existing parties in the absence of the party in question, whereas, Rule 19(a)(2) focuses on the effects the litigation would have on the absent party." *Schweyer Imp.-Schnittholz GmbH*, 220 F.R.D. at 585.

### B.      Complete Relief Cannot Be Afforded Without the Commission.

Here, complete relief cannot be afforded Plaintiffs in the absence of the Commission. Plaintiffs, for example, allege their rights have been constitutionally denied because the "vast majority of parolees in the State of Missouri need and are entitled to appointed counsel to help them navigate these arcane proceedings" and "Defendants uniformly refuse to provide attorneys to parolees at any point in the parole revocation process." Am. Compl. at ¶¶ 7 and 10. Defendants, however, do not have authority to provide or appoint attorneys for indigent parolees. That

authority rests with the Commission. § 600.042.4(5), RSMo ("The director and defenders shall provide legal services to an eligible person: … For whom the federal constitution or the state constitution requires the appointment of counsel."); 18 CSR 10-2.010(1)(C) and (E) ("The director and defenders shall provide legal services to an eligible person- … Who is detained or charged with a violation of probation or parole.").

The Missouri General Assembly intended the public defender system to be an independent, self-sufficient system for providing legal services to eligible citizens. *State ex rel. Robinson v. Franklin*, 48 S.W.3d 64, 69 (Mo. App. W.D. 2001). Also, the Commission cannot decline to support categories of cases for which it is responsible. *State ex rel. Mo. Pub. Def. Comm'n v. Pratte*, 298 S.W.3d 870, 890 (Mo. 2009). As a result, a judgment related to providing the assistance of counsel is incomplete in the Commission's absence. *See Ashley v. United States Dep't of Interior*, 408 F.3d 997, 1002-03 (8th Cir. 2005).

Once a party is determined to be required, as in this case, Rule 19(b) provides four factors that courts are to consider in deciding "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." *Two Shields v. Wilkinson*, 790 F.3d 791, 798 (8th Cir. 2015) (quoting Fed. R. Civ. P. 19(b)). These factors are:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>> (A) protective provisions in the judgment;
>> (B) shaping the relief; or
>> (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.* These factors weigh heavily in favor of dismissal.

A judgment requiring appointment of counsel in the absence of the Commission would prejudice not only the existing parties but also the Commission. As to existing parties, a judgment requiring appointment of counsel by parties that cannot appoint counsel could potentially place Defendants in a situation in which they reap consequences for actions they cannot effectuate. Similarly, the judgment would purport to bind an entity – the Commission – that was not a party to the action and judgment. The resulting prejudice could be lessened by a judgment that merely required the Defendants to refer requests for appointment of counsel to the Commission, but that already happens and the Commission has refused to make appointments. Moreover, the appointment of counsel appears to be a critical part of the relief Plaintiffs seek. For these reasons, a judgment entered in the absence of the Commission would not be adequate.

Plaintiffs also have an adequate remedy if the case were dismissed for nonjoinder. Appointment of counsel in specific cases could be addressed through individual actions to enforce against the Commission.

### C. Granting the Relief Requested Would Leave Defendants Subject to a Substantial Risk of Incurring Double, Multiple, or Otherwise Inconsistent Obligations.

Finally, granting the Plaintiffs' requested relief in the absence of the Public Defender Commission would subject Defendants to a substantial risk of incurring otherwise inconsistent obligations. On the one hand, a judgment would require appointment of counsel by Defendants, while under Missouri law Defendants do not have authority to appoint counsel. Moreover, appointment of counsel by Defendants likely would create conflicts with the ethical rules and the mandate and budget provisions of the Missouri General Assembly and Governor. In short, any remedy requiring Defendants to provide counsel would create new obligations for the Defendants which would be inconsistent with their role and create redundant costs and conflicts.

16

Courts in other states have held that public defender systems with legislative charters similar to that of the Missouri Public Defender Commission are necessary and indispensable parties in actions alleging a denial of the right to counsel. *See Com. ex rel. Patterson v. Penn. Bd. of Prob. & Parole*, 258 A.2d 693, 694–95 (Pa. 1969) (concluding that where the Pennsylvania legislature had given the Office of Public Defender the duty of providing counsel to indigent parolees by statute, "the lower court should have designated the Office of Public Defender to provide counsel and should not have ordered the Parole Board to appoint counsel"); *see also N.Y. Cty. Lawyers' Ass'n v. State*, 745 N.Y.S.2d 376, 381 (N.Y. Sup. Ct. 2002); *Richmond v. Dist. Court*, 990 A.2d 549 (Md. 2010).

## Conclusion

For the foregoing reasons, Defendants pray this Court to dismiss the amended complaint as moot and for failure to join an indispensable party.

Respectfully submitted,

**ERIC S. SCHMITT**
Attorney General

*/s/ Michael Pritchett*
Michael Pritchett, Mo. Bar No. 33848
Assistant Attorney General
P.O. Box 899
Jefferson City, MO 65102
(573) 751-8864; Fax: (573) 751-9546
Email:michael.pritchett@ago.mo.gov

**ATTORNEYS FOR DEFENDANTS**
**DUSENBERG, FITZWATER, JONES,**
**MCSWAIN, PRECYTHE, RUCKER,**
**WELLS, AND ZAMKUS**

17

# CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of November, 2019, I filed the foregoing electronically

with the Clerk of Court to be served by operation of the Court's electronic filing system upon the

following:

| | |
|---|---|
| Sheila A Bedi | Amy E. Breihan |
| Locke E. Bowman | Megan G. Crane |
| Northwestern Pritzker School of Law | Roderick and Solange MacArthur Justice Center |
| 375 East Chicago Avenue | 3115 South Grand Blvd., Suite 300 |
| Chicago, IL 60611 | St. Louis, MO 63118 |

*/s/ Michael Pritchett*
Michael Pritchett
Assistant Attorney General