STATE OF MISSOURI       )
                        ) ss
COUNTY OF OSAGE         )

### AFFIDAVIT OF CUSTODIAN PURSUANT TO SECTION 490.692 RSMO

Before me, the undersigned authority, personally appeared Dedie Troesser, who stated as follows:

My name is Dedie Troesser. I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated:

I am a Custodian of Records of the Missouri Division of Probation and Parole. Attached hereto are **9 page** of records from the Missouri Division of Probation and Parole pertaining to **P3-8.7 Confined Board Violators**. These records are kept in the regular course of business, and it was in the regular course of business for an employee or representative with knowledge of the act, event, condition, opinion or diagnosis recorded to make the record or to transmit information thereof to be included in such record, and the record was made at or near the time of the act, event, condition, opinion, or diagnosis. The records attached hereto are exact duplicates of the original.

_Dedie Troesser_
Dedie Troesser

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my official seal this 24th day of October, 2019.

_Deborah L. Vance_
Notary Public

Commission expires: 12-5-2020

```
DEBORAH L. VANCE
Notary Public - Notary Seal
STATE OF MISSOURI
County of Callaway
My Commission Expires 12/5/2020
Commission # 12624108
```

MISSOURI DEPARTMENT OF CORRECTIONS
DIVISION OF PROBATION AND PAROLE

\*\* POLICY AND PROCEDURE MANUAL \*\*

PROCEDURE TITLE:  PROCEDURE NO. P3-8.7
Confined Board Violators

Signature on File *Julie Kempker*
Division Director

EFFECTIVE DATE:
April 1, 2019

I. PURPOSE

This procedure sets forth guidelines for processing Parole Board Violators who have been transported to a Violator Unit.

A. AUTHORITY: 217.040, 217.655, 217.690, and 217.720 RSMo

B. APPLICABILITY: All divisional staff

C. SCOPE: Nothing in this procedure is intended to give a protected liberty interest to any client. This procedure is intended to guide staff actions.

II. DEFINITIONS

A. Automated Road Book (ARB) - An electronic source of documented activities and information regarding a client.

B. Cautionary Statement - A statement provided to a client by an officer that informs the client prior to discussion of alleged violations: "You have the right to not make a statement and any statement made could be included in a violation report to the supervising authority".

C. Chief Administrative Officer (CAO) - The chief administrative officer is the highest-ranking individual at the worksite, as designated below. Exception: Employees at worksites who do not report to the worksite chief administrative officer shall be accountable to the assistant division directors/central office section heads who are in their chain of command.

   1. Division Director
   2. Assistant Division Director
   3. Zone Deputy Chiefs

4. Regional Administrator
5. Superintendent (as applicable)
6. District Administrator

D. Electronic Monitoring - The assignment of a client to a home environment under the supervision of the division utilizing electronic monitoring surveillance.

E. Institutional Treatment Center (ITC) - A facility with highly structured treatment programs for court and Parole Board referred clients with emphasis placed on substance use treatment, relapse prevention, criminality, life skills and community release planning.

F. Interstate Compact Offender Tracking System (ICOTS) - The nationwide database system by which all interstate transfer of eligible clients are tracked by member states.

G. Preliminary Hearing - A hearing to determine whether there is probable cause to believe the client committed the crime with which he or she is charged or that he or she violated their supervision, to include out of state returns.

H. Probable Cause - Information sufficient to cause a prudent person to believe the facts are probably true; having more evidence for than against.

I. Residential Facility - A community based facility contracted by the department for the housing of clients and services, which may vary depending on facility.

J. Transition Center (TC) - A residential facility which provides community based transitional services and supervision programming to male offenders released from the Division of Adult Institutions, as well as offenders under community supervision who are in need of additional structure. Access to services may include substance use treatment, vocational training, employment readiness, educational, home plan assistance, family reunification, and linkages to other community based resources.

K. Violator Unit - A unit responsible for processing parole and conditional release violators incarcerated in a Department of Corrections facility.

III. PROCEDURE

A. General Information

1. The supervising district shall document by the next business day after the client's arrest, the following information in the Automated Road Book (ARB) utilizing the "VI" contact type:

a. date the client was arrested,

b. date, time and location the violation interview was conducted,

   c. the client's statements to each violation,

   d. if a copy of the Violation Report (VR) was provided to the client, and

   e. if the client waived or requested a preliminary hearing.

   2. If the client was not interviewed or offered a preliminary hearing prior to their return to a Department Reception and Diagnostic Center (RDC), then the supervising district shall document the reason(s) in the ARB.

B. Case Assignment

   1. Responsibility for open cases remains with the supervising Probation and Parole Officer (PPO), regardless of the client being arrested within or outside the supervising district's supervision area.

   2. Cases shall not be transferred through the agency computer system.

   3. Cases previously closed to the field shall be assigned to the appropriate Violator Unit by staff in Probation and Parole Central Office (CO).

C. Violator Units

   Full cooperation and expedient communications between the supervising PPO and the Violator Unit staff is required to ensure processing of detained clients as quickly as possible.

   1. If the client was not interviewed or offered an agency preliminary hearing prior to being returned to an RDC, the supervising PPO shall be responsible for:

      a. obtaining and providing the Violator Unit with information relating to the circumstances of the client's arrest,

      b. obtaining and reporting any other additional information not previously known,

      c. providing the information in the form of a Violation Report (VR) within three business days of the client's arrival at an RDC.

   2. In closed cases, the Violator Unit staff shall work in conjunction with the district where the client was arrested, to obtain whatever information is necessary to process the client's case.

3. The Violator Unit shall be responsible for completing a violation interview and offering the preliminary hearing within five business days of the client's arrest.

4. Conducting the Violation Interview

   a. The Violator Unit shall:

      1) provide a cautionary statement to the client prior to the violation interview;

      2) provide a copy of the warrant to the client (if not provided previously);

      3) explain the Notice of Rights During the Revocation Process form (Attachment A) and obtain the client's signature;

      4) read the Notice of Right to Counsel section on the Request for or Waiver of Preliminary Hearing form (Attachment B) to the client. The client can:

         a) waive legal counsel,

         b) present his or her own counsel, or

         c) be screened for a public defender by the PPO using the Counsel Eligibility Screening Instrument - Parole Cases form (Attachment C);

         d) If the client is eligible for a public defender based on the Counsel Eligibility Screening Instrument - Parole Cases form (Attachment C), then the PPO shall:

            (1) assist the client in completing the Application/Affidavit for Public Defender Services and Promise to Pay form (Attachment D), and

            (2) fax the completed Application/Affidavit for Public Defender Services and Promise to Pay form (Attachment D) and the Counsel Eligibility Screening Instrument - Parole Cases form (Attachment C); to the local Public Defender Office; and

      5) advise the client of the specific violation(s).

   b. The client shall be given the opportunity to respond to each specific violation(s).

c. The client shall be offered a Preliminary Hearing as outlined in divisional procedure.

   d. All signed forms will be kept in the client's file.

      1) If the client is processed by RDC staff, then the signed forms shall be faxed or scanned and emailed to the supervising district.

      2) If the case is closed, then RDC staff shall upload the forms into the Parole Board's automated record through FileBound.

   5. Report Preparation

      a. The Violator Unit PPO shall document the client's response from the violation interview in the ARB.

      b. The supervising PPO shall be responsible for submitting either an Initial or Supplemental VR with a recommendation to the Parole Board within three business days.

D. Recommendations

   1. When the decision of the Parole Board is for Administrative Discharge:

      a. the supervising district and Violator Unit shall be notified by CO,

      b. the supervising district shall cancel their warrant if it was not yet cancelled,

      c. a case closing shall be forwarded to the supervising district from CO, and

      d. Violator Unit staff shall notify the client of the Parole Board's decision.

   2. When the decision of the Parole Board is for Continuance:

      a. the Violator Unit shall process the release plan,

      b. clients in the Violator Unit should be given priority consideration for placement in available field supervision strategies, including a Transition Center (TC) and Residential Facilities (RF), and

      c. the Violator Unit shall be responsible for the booking process of clients recommended for placement in an Institutional Treatment Center (ITC), RF or TC.

   3. When the decision of the Parole Board is to return the client for revocation:

a. CO staff shall notify the supervising district and applicable Violator Unit, and

   b. CO staff shall forward a case closing to the supervising district.

E. Processing Release Plans

The Violator Unit staff shall initiate a plan for the client's release on the same day continuance is ordered by the Parole Board. The following steps shall be taken:

1. Open Cases being released to the supervising district:

   a. Violator Unit staff shall contact the Chief Administrative Officer (CAO)/designee by telephone to request verbal reporting instructions,

   b. district staff shall respond as soon as possible but no later than two business days,

   c. the client shall be released as soon as possible but no later than three business days of receiving the verbal reporting instructions,

   d. the client shall be provided a written directive to report immediately upon release with a copy sent electronically to the supervising district, and

   e. if the proposed home plan is not acceptable, then the supervising district and institutional PPO shall work jointly to develop an alternative plan noting the above established time lines shall still be followed.

2. Open cases being released to an alternative district:

   a. Violator Unit staff shall contact the CAO/designee by telephone to request verbal reporting instructions,

   b. district staff shall respond as soon as possible but no later than two business days,

   c. the client shall be released as soon as possible but no later than three business days of receiving the verbal reporting instructions,

   d. the client shall be provided a written directive to report immediately upon release with a copy sent electronically to both the receiving district and supervising district,

   e. the originating district shall submit an investigation request to the receiving district, and

f. if the proposed home plan is not acceptable, then the receiving district, and institutional PPO shall work jointly to develop an alternative plan noting the above established time lines shall still be followed.

3. Closed Cases being released to either the last supervising or alternative district:

   a. Violator Unit staff shall contact the CAO/designee by telephone to request verbal reporting instructions,

   b. district staff shall respond as soon as possible but no later than two business days,

   c. the client shall be released as soon as possible but no later than three business days of receiving the verbal reporting instructions,

   d. the client shall be provided a written directive to report immediately upon release with a copy sent electronically to the receiving district,

   e. the violator unit staff shall submit an investigation request to the receiving district,

   f. copies of the written directive or investigation request may be sent to the last supervising district as a means to notify the district of case movement, and

   g. if the proposed home plan is not acceptable, then the receiving district and institutional PPO shall work jointly to develop an alternative plan noting the above established time lines shall still be followed.

4. Electronic Monitoring (EM) clients shall be released promptly upon receipt of reporting instructions. Electronic Monitoring may be utilized as a supervision strategy after the client is received by the supervising district. Clients shall not remain in custody pending placement on EM.

5. Unacceptable Home Plans

   Every effort shall be made to release confined Parole Board clients as soon as possible. If a home plan has been determined unacceptable, the following shall occur:

   a. Discussion should occur between the receiving district and the institutional PPO to note why the home plan was unacceptable and what other alternatives were researched.

   b. CAO/designees shall review denied home plans to ensure all avenues have been researched to expedite the client's release.

c. If an investigation request was submitted and the home plan denied, supervisory review and approval of the denial should be reflected in a reply to investigation.

6. No Identified Home Plan

   With the exception of Sex Offenders, Domestic Violence Clients, and Mental Health 4 clients, the following shall occur:

   a. The client shall be released to the last supervising field district within three days of notice of the continuance.

   b. The institutional PPO shall contact the last supervising district by telephone to obtain verbal reporting instructions and discuss the client's needs, including the client's transportation plan upon release.

   c. Client's who were direct Division of Adult Institution (DAI) releases to the TC, shall be given reporting instructions to District ERA.

   d. Once a release date has been established, a Chronological Data Sheet (CDS) shall be prepared, noting the release date, reporting instructions and using the district address as the client's home address.

   e. Upon final forming the CDS and obtaining the client's signature, the CDS shall be distributed to:

      1) the assigned district office, and

      2) DAI Records Office.

## IV. ATTACHEMENTS/FORMS

   A. Notice of Rights During the Revocation Process
   B. Request for or Waiver of Preliminary Hearing
   C. Counsel Eligibility Screening Instrument - Parole Cases
   D. Application/Affidavit for Public Defender Services and Promise to Pay

## V. REFERENCES

   P2-1.1  Board Investigations
   P3-7.1  Warrant Procedures
   P3-8.2  Violation Interview
   P3-8.3  Violation Report - Format
   P3-9    Preliminary Hearings
   P3-9.1  Preliminary Hearing General Procedures
   P3-9.4  Conducting the Board Preliminary Hearing
   P3-10.2 Inter-District Transfer

P6-6.1 Parole Decisions
P6-8.1 Processing Parole and Conditional Release Violators

## VI. HISTORY

Original effective date:
Revision effective date: June 2004
Revision effective date: July 8, 2009
Revision effective date: November 1, 2011
Revision effective date: April 1, 2019