STATE OF MISSOURI )
) ss
COUNTY OF OSAGE )

### AFFIDAVIT OF CUSTODIAN PURSUANT TO SECTION 490.692 RSM0

Before me, the undersigned authority, personally appeared Dedie Troesser, who stated as follows:

My name is Dedie Troesser. I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated:

I am a Custodian of Records of the Missouri Division of Probation and Parole. Attached hereto are **13 page** of records from the Missouri Division of Probation and Parole pertaining to **P6-8.1 Processing Parole and Conditional Release Violators.** These records are kept in the regular course of business, and it was in the regular course of business for an employee or representative with knowledge of the act, event, condition, opinion or diagnosis recorded to make the record or to transmit information thereof to be included in such record, and the record was made at or near the time of the act, event, condition, opinion, or diagnosis. The records attached hereto are exact duplicates of the original.

_Dedie Troesser_
Dedie Troesser

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my official seal this 24th day of October, 2019

_Deborah L. Vance_
Notary Public

Commission expires: 12-5-2020

DEBORAH L. VANCE
Notary Public - Notary Seal
STATE OF MISSOURI
County of Callaway
My Commission Expires 12/5/2020
Commission # 12624108

```
************************************************************************
```

MISSOURI DEPARTMENT OF CORRECTIONS
DIVISION OF PROBATION AND PAROLE

** POLICY AND PROCEDURE MANUAL **

```
************************************************************************
```

PROCEDURE TITLE:  PROCEDURE NO. P6-8.1
Processing Parole and Conditional
Release Violators

Signature on File
*Julie Kempker*
Division Director

EFFECTIVE DATE:
July 3, 2019

```
************************************************************************
```

I. PURPOSE

The purpose of this procedure is to provide direction for processing alleged parole and conditional release violators upon being returned to the Division of Adult Institutions.

A. AUTHORITY: 217.040, 217.690, 217.720, and 217.722 RSMo

B. APPLICABILITY: All divisional staff

C. SCOPE: Nothing in this procedure is intended to give a protected liberty interest to any client. This procedure is intended to guide staff actions.

II. DEFINITIONS

A. Absconder - A client under supervision who has left their residence without the permission of the supervising officer for the purpose of avoiding supervision

B. Adverse Witness - A witness whose relationship to the opposing party is such that his or her testimony may be prejudiced against the opposing party.

C. Cautionary Statement - A statement provided to a client by an officer that informs the client prior to discussion of alleged violations: "You have the right to not make a statement and any statement made could be included in a violation report to the supervising authority".

D. Chief Administrative Officer (CAO) - The chief administrative officer is the highest-ranking individual at the worksite, as designated below. Exception: Employees at worksites who do not report to the worksite chief administrative officer shall be accountable to the assistant division directors/central office section heads who are in their chain of command.

Case 2:17-cv-04149-SRB   Document 194-11   Filed 11/01/19   Page 2 of 14

1. Division Director
2. Assistant Division Director
3. Deputy Division Director
4. Regional Administrator
5. Superintendent (as applicable)
6. District Administrator

E. <u>Conditional Release</u> - Statutorily mandated release (not discretionary parole), with a required period of supervision.

F. <u>Conflicting Sentence</u> - Two or more sentences at least one of which is stipulated by the court for a client to serve a sentence pursuant to 559.115 RSMo, or 217.362 RSMo.

G. <u>Domestic Violence Clients</u> - Individuals with a special condition imposed by the court or Parole Board and/or under supervision for the following offenses where an intimate partner was the victim:

1. Aggravated Stalking (565.225 RSMo; prior to 01/01/2017),
2. Domestic Assault 1st (565.072 RSMo),
3. Domestic Assault 2nd (565.073 RSMo),
4. Domestic Assault 3rd (565.074 RSMo),
5. Domestic Assault 4th (565.076 RSMo),
6. Stalking 1st (565.225 RSMo), and
7. Violation Order Protection/Ex Parte (455.085 and 455.050 RSMo).

H. <u>Interstate Compact Offender Tracking System (ICOTS)</u> - The nationwide database system by which all interstate transfer of eligible clients are tracked by member states

I. <u>Maximum Release</u> - The date of final discharge of a sentence.

J <u>Parole</u> - The discretionary release of a client, whose term has not yet expired, with a required period of supervision.

K. <u>Parole Board Staff Advisory (BSA)</u> - Notification to probation and parole staff of a Parole Board decision in regard to a Violation Report.

L. <u>Parole/Conditional Release Violator (PV/CRV)</u> - A client who has violated the conditions of parole or conditional release established by order of the Parole Board.

M. <u>Preponderance of Evidence</u> - Standard of proof that based on the facts as presented, allegation(s) are more likely than not to be true.

N. <u>Probable Cause</u> - Information sufficient to cause a prudent person to believe the facts are probably true; having more evidence for than against.

O. Reporting Instructions -

   1. Interstate: The orders given by a sending or receiving state directing the client to report to a designated person or place, at a specified date and time, in the other state.

   2. Intrastate: A directive given to the client to report as specified by the receiving district.

P. Violator Assessment Score - The resulting number using an automated scoring tool to identify existing risk factors for recidivism. This scoring tool is used in conjunction with the guideline matrices to establish standardized release date ranges.

Q. Sex Offenders - All persons under the supervision of the Board of Probation and Parole for offenses under Chapter 566 or any sex offense involving a child under Chapter 568 or 573 for which sexual treatment is mandated by state statute. Offenses prosecuted as "attempt" class cases also require sex offender supervision and treatment.

R. Transition Center - A residential facility which provides community based transitional services and supervision programming to male offenders released from the Division of Adult Institutions, as well as offenders under community supervision who are in need of additional structure. Access to services may include substance use treatment, vocational training, employment readiness, educational, home plan assistance, family reunification, and linkages to other community based resources.

S. Violation Report (VR) - Formal notice to the court or Parole Board that a client has failed to comply with conditions of supervision.

T. Witness - A person who has knowledge of the circumstances of a case; one who testifies as to what he or she has seen, heard, otherwise observed, or has expert knowledge of; or can provide mitigating information as why revocation should not occur. They can present information in person, by phone, or written statement.

III. PROCEDURE

   A. Notification of a Violator's Return

      1. Upon arrival of a client at a Reception and Diagnostic Center (RDC), the records office shall provide written notification of the client's return to the parole office.

      2. The RDC parole office shall enter data regarding the client's return in the violator log.

Case 2:17-cv-04149-SRB   Document 194-11   Filed 11/01/19   Page 4 of 14

a. The case is tracked in the violator log as the client proceeds through the revocation process.

b. Any subsequent information is recorded as the case is processed.

c. Cases with less than 90 days from the maximum release date and clients returned pursuant to 217.362 RSMo or 559.115 RSMo shall be flagged as ASAP and processed as a first priority.

d. Cases with a maximum release date within 20 calendar days, shall have the case material not currently in the agency computer system electronically forwarded to the caseload manager. The items forwarded shall include:

   1) A copy of the Parole Violator Worksheet,

   2) Request for or Waiver of Revocation Hearing (Attachment A),

   3) Order of Revocation (Attachment B).

e. Cases with less than five calendar days until the maximum release date are not processed. The caseload manager shall be notified and the client processed for release.

3. Central Office (CO) shall notify RDC parole staff of any instructions or issues through the use of an electronic Parole Board Staff Advisory (BSA).

   a. The BSA shall not be provided to the client.

   b. RDC staff shall request any necessary BSA clarification by email for the purpose of tracking information.

4. When a Parole Violator (PV) or Conditional Release Violator (CRV) is returned with a new sentence which is a violation of supervision a BSA is required.

   a. If an Initial Violation Report (VR) citing the client for Condition #1-Laws in regard to the new offense has not been completed, then the Institutional Parole Officer (PPO) shall complete the IVR within seven business days.

   b. The client's response to the violation shall be included in the Parole Violator Return Report.

5. New conflicting sentences pursuant to 559.115 RSMo shall be processed ASAP to provide enough time for the client to attend treatment on the 120 day case, if allowed by the Parole Board.

a. A Supplemental VR shall be submitted to the Parole Board within five business days of receipt of a new Sentence and Judgment, unless the report was completed by a field officer.

   b. An Institutional Face Sheet shall be created advising the Parole Board of the new sentence.

   c. The 559.115 RSMo case shall not be processed and the client shall remain at the RDC until the new BSA has been received.

6. New conflicting sentences pursuant to 217.362 RSMo, Long Term Treatment Center (LTC), shall be processed ASAP to provide enough time for the client to attend treatment if allowed by the Parole Board.

   a. Prior to creating the Parole Return Report, the client shall be screened for LTC (pursuant to each RDC processing) and that information shall be included in the Return Report advising the Parole Board of the client's eligibility for LTC.

   b. For LTC cases with a sentence of seven years or less, the client can be placed on the transfer docket. For LTC cases with a sentence more than seven years, a Board Decision is required before the transfer can occur.

7. Treatment Failures, Terminations, or Withdrawals shall be authorized for return based on the treatment failure date.

B. Violation Process

1. Every parole or conditional release client who is returned to the Division of Adult Institutions (DAI) as an alleged violator shall receive an interview by a PPO.

   a. The interview shall be held within five business days of the client's arrest.

   b. The purpose of the interview is to:

      1) allow the client to explain in detail any and all circumstances in regard to the violation(s);

      2) allow the client to offer any other information for the Parole Board to consider;

      3) allow the client to ask questions; and

      4) discuss the potential outcomes and offer the client an opportunity to request or waive the revocation hearing.

2. Case Preparation

    a. The PPO shall review all case material.

    b. All VRs since the last conditional or parole release that are in Delayed Action or No Action status shall be included in processing. This includes ICOTS violations from the ICOTS system.

    c. Any pending violations not noted on the BSA shall be included in the return report under the authority of the RDC supervisor/designee.

    d. The agency computer system shall be utilized to check for additional VRs, Notice of Citations (NOC) and research additional information, including Parole Violator Assessment Score, if applicable.

3. Conducting the Interview

    a. Case material shall be reviewed prior to the interview and discussion with the client noting:

        1) supervision strategies,

        2) prior arrests,

        3) substance use,

        4) medical or mental health issues,

        5) aggressive/assaultive behaviors,,

        6) Violator Assessment Score, if applicable,

        7) home plan information,

        8) pending charges with case numbers, if applicable, and

        9) other information that may be relevant to the Parole Board regarding the client's case.

    b. The PPO shall:

        1) explain the purpose of the interview, and give the cautionary statement,

        2) explain the Notice of Rights During the Revocation Process form (Attachment C) and obtain the client's signature,

3) Provide all VRs, including all ICOTS reports pertaining to the violation(s) and the Preliminary Hearing Officer's Report, if applicable

c. During the interview, the client shall either waive or request a revocation hearing before the Parole Board using the Request for or Waiver of Revocation Hearing form (Attachment A).

d. The Notice of Counsel section on the Request for or Waiver of Revocation Hearing form (Attachment A) shall be read to the client. The client can:

1) waive legal counsel,

2) present his or her own counsel, or

3) be screened for a public defender by the PPO by using the Counsel Eligibility Screening Instrument - Parole Cases form (Attachment D),

e. If the client is eligible for a public defender based on the Counsel Eligibility Screening Instrument - Parole Cases form (Attachment D), then the PPO shall:

1) assist the client in completing the Application/Affidavit for Public Defender Services and Promise to Pay form (Attachment E), and

2) fax the completed the Application/Affidavit for Public Defender Services and Promise to Pay form (Attachment E) and the Counsel Eligibility Screening Instrument - Parole Cases form (Attachment D) to the local Public Defender Office.

f. A Request for or Waiver of Revocation Hearing form (Attachment A) shall be completed and one copy distributed to each of the following:

1) client,

2) client's parole file, and

3) diagnostic packet.

C. Revocation Report

1. After the interview is conducted, a Revocation Report or Revocation Hearing Waiver Report shall be submitted to the Parole Board as soon as possible. Each report shall include a Violator Assessment Score with the exception of clients returned with a new sentence.

2. If the client waives the revocation hearing, then a Revocation Hearing Waiver Report should be completed in narrative form and briefly note:

a. the circumstances of the violation(s), including the client's response(s) to the violation(s),

b. any information regarding pending charge(s), including official version, docket number(s), arrest date(s) of any charges that occurred while on supervision,

c. absconder information, including dates of the abscond period, and new maximum release date,

d. fugitive information, including dates of the fugitive period, and new maximum release date, and

e. any home plan information.

3. If the client requests a revocation hearing before the Parole Board, then a Revocation Report shall be completed.

   a. When a client requests a revocation hearing, the PPO shall complete a letter notifying the client of the date, time, and place of the hearing with a copy placed in the client's parole file.

   b. The revocation report shall be prepared in the following format and provided to the client prior to the hearing:

      1) Conditions and Circumstances:

         This section shall include the condition(s) violated with a short explanation.

         a) Sources: This paragraph shall include sources of information such as Violation Reports, Hearing Officer's Reports, etc.

         b) Circumstance(s): Subsequent paragraphs shall contain the facts as determined by the sources in narrative form setting out the circumstances surrounding the violation(s).

            (1) The violation(s) shall be addressed in the same order as those listed in the introduction and separated by paragraph.

            (2) If the client has been arrested on a new charge(s), then the paragraph regarding violation of Condition #1 shall include all available information regarding the charge, county, docket number, next court date or sentence date and length of sentence.

P6-8.1 (07/19) Page 8 of 13
Case 2:17-cv-04149-SRB   Document 194-11   Filed 11/01/19   Page 9 of 14

c) Client's Version: This paragraph shall include a summary of the client's admission or denial, and version of said violation(s). The report shall reflect the client's course of action with respect to pending charge(s).

2) Other Violations

a) This section shall contain three columns with headings listed from left to right: Date, Conditions Violated (identified by number), and Disposition.

b) This section shall include all other violations submitted from the date of release on parole or conditional release status.

3) Mitigating or Aggravating Circumstances

a) This section shall only include the following information from the current period of supervision and not a full case review:

(1) Risk Assets, which shall include any positive assets from time of release on current supervision.

(2) Risk Liabilities, which shall include any risk factors that have occurred either in the current supervision or case review.

b) This information can be entered like in a Sentencing Assessment Report. The report shall be provided to the client prior to the hearing.

4) Recommendation

The PPO shall make recommendations based on the facts of the case and severity of the violations noting whether or not probable cause was established on the cited violations.

D. Revocation Hearing

1. Revocation hearings shall be held within 30 business days from the client's return to an RDC as either a Board Hold or a Parole Return for Revocation.

2. The Parole Analyst shall bring the client's file to the revocation hearing and all of the diagnostic processing information shall be included with the client file at that time.

3. The Parole Board may continue a hearing if it is decided more information is needed.

E. Attorney

If the client requested counsel, their counsel can be present during the revocation hearing.

F. Witnesses

1. The client may call witnesses who can provide knowledge of the circumstances of a case; one who testifies as to what he or she has seen, heard, otherwise observed, or has expert knowledge of; or can provide mitigating information as why revocation should not occur. The witnesses can present information in person, phone, or written statements.

2. The witnesses must be 18 years or older. It is the responsibility of the client to notify the witness as to the exact date, time and place of the revocation hearing.

3. The PPO shall ensure the client has the opportunity to contact their witnesses.

4. The Parole Board has the right to limit the number of witnesses.

5. Witnesses shall be responsible for any personal expenses.

6. Another client may not be present at the hearing unless they have direct knowledge of the violation and is offered as a witness.

    a. The Parole Board shall not compel, arrange transfer, or make any special accommodations for another client to be present for the revocation hearing.

    b. The Parole Board may request a written statement from the other client.

G. Adverse Witnesses

1. The client has a right to confront, or cross examine adverse witnesses unless there is finding that the witness may be subject to risk if the identity is disclosed.

2. The PPO shall contact the field district office by phone requesting that adverse witnesses be contacted.

    a. An e-mail shall follow confirming the request.

    b. Attempts to contact adverse witnesses shall be documented by field staff in the agency computer system.

c. Staff shall request participation of the adverse witnesses at the revocation hearing and explain the case for revocation is weakened if they choose not to participate.

d. Telephone interviews may be used for the revocation hearing if the adverse witness cannot appear in person. When telephone witnesses are used they must identify themselves for the record, prior to testifying.

e. The field district staff shall respond by e-mail regarding the intentions of the adverse witnesses prior to the revocation hearing.

3. Should the hearing panel believe it is necessary, the hearing may be recessed until the next hearing day in an attempt to secure the presence of adverse witnesses.

H. Parole Board Decision

Based on the preponderance of the evidence, the Parole Board may:

1. request additional information by means of various types of reports from any party or agency who may be able to supply additional information regarding the violation(s);

2. schedule the client for another personal hearing before the Parole Board to further assess the violation(s);

3. revoke and schedule the client for either a future parole hearing or a new release date;

4. continue the client on supervision, which could result in referrals to alternative supervision strategies;

    a. After the Parole Board's decision is made to continue, Central Office (CO) shall notify the institutional parole office where the client is housed.

    b. The PPO shall inform the client of the Parole Board's decision and work with the client to develop a release plan.

    c. The PPO shall contact the field office where the home plan is located and request verbal reporting instructions.

    d. The home plan for Sex Offenders and Domestic Violence cases shall be investigated prior to the field office providing reporting instructions. If after review, the home plan is determined not acceptable, then the field office shall request an alternative release plan from the PPO.

P6-8.1 (07/19) Page 11 of 13
Case 2:17-cv-04149-SRB   Document 194-11   Filed 11/01/19   Page 12 of 14

- e. For clients that do not identify a home plan (except Sex Offenders, Domestic Violence Clients, and Mental Health 4 clients),

    1) The client shall be released to the last supervising field district within three days of notice of the continuance.

    2) The institutional PPO shall contact the last supervising district by telephone to obtain verbal reporting instructions and discuss the client's needs, including the client's transportation plan upon release.

    3) Clients who were direct Division of Adult Institution (DAI) releases to the Transition Center, shall be given reporting instructions to District ERA.

    4) Once a release date has been established, a Chronological Data Sheet (CDS) shall be prepared, noting the release date, reporting instructions and using the district address as the client's home address.

- f. Upon receipt of Reporting Instructions, the PPO shall:

    1) schedule the client for release within three business days and

    2) send a release notice to the appropriate DAI staff and the receiving district.

- g. CO may complete amended Orders of Parole or Orders of Conditional Release if the Parole Board elects to add abscond time or, if the Parole Board adds a special condition(s) not on the original orders.

I. Time Accredited or Not Accredited to Sentence

1. Pursuant to 217.720(3) RSMo, the Parole Board may determine how much abscond time, if any, shall count as time served under the sentence.

2. A decision to add or waive abscond time may occur in conjunction with other appropriate dispositions, including program placement, continuance, enhanced supervision strategies, and re-incarceration.

3. Time served outside the Missouri DAI, as determined by the Parole Board, may or may not be credited.

J. Distribution of Forms

All signed forms shall be emailed to PPBOARD who will uploaded the forms into the Parole Board's Automated Record through FileBound once the file is pulled for the Parole Board.

## IV. ATTACHMENTS/FORMS

A. Request for or Waiver of Revocation Hearing
B. Order of Revocation (931-1917)
C. Notice of Rights During the Revocation Process
D. Counsel Eligibility Screening Instrument - Parole and Interstate Cases
E. Application/Affidavit for Public Defender Services and Promise to Pay

## V. REFERENCES

| | |
|---|---|
| P3-6.3 | Supervision of Domestic Violence Clients |
| P3-8.3 | Violation Report - Format |
| P3-8.4 | Notice of Citation |
| P3-9.1 | Preliminary Hearing General Procedures |
| P3-11.1 | Supervision of Sex Offenders |
| P6-5.3 | Parole/Conditional Release Violator Salient Factor Score |
| P6-7.2 | Release Processing |

## VI. HISTORY

Original effective date:
Revision effective date: September 28, 2008
Revision effective date: March 11, 2011
Revision effective date: December 17, 2012
Revision effective date: January 29, 2016
Revision effective date: April 1, 2019
Revision effective date: July 3, 2019