# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

| | | |
|---|---|---|
| STEPHANIE GASCA, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 17-cv-04149 |
| | ) | |
| ANNE PRECYTHE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' SUGGESTIONS IN OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................ 2

   1.   Defendants' Motion Should Be Denied Because it is Untimely............................................ 2

   2.   Defendants' Voluntary Policy Changes Do Not Warrant Dismissal—Especially Because Those Policies Fail to Address or Cure All Constitutional Deficiencies ................................... 4

      A.   Defendants' new policies do not cure the constitutional deficiencies in Missouri's parole revocation process. ................................................................................................. 5

      B.   Defendants have not demonstrated their revised revocation process is constitutionally adequate. ................................................................................................................................. 7

   3.   The Missouri Public Defender Commission is Not an Indispensable Party ....................... 7

      A.   The Commission is not a necessary party because Defendants have the authority and the obligation to provide state-funded counsel to eligible parolees. ........................................... 10

      B.   Even if the Commission were the exclusive means of providing legal services to indigent alleged parole violators, they are not a necessary party because this court can "accord complete relief" without them.................................................................................... 14

   4.   Even if the Court finds that the Commission is a Necessary Party, It Should Not Dismiss the Case .............................................................................................................................. 15

Case 2:17-cv-04149-SRB   Document 202   Filed 11/18/19   Page 2 of 22

# TABLE OF AUTHORITIES

**Cases**

*Ashley v. U.S. Dept. of Interior*, 408 F.3d 997 (8th Cir. 2005)....................................................... 12

*Brandon v. Holt,* 469 U.S. 464 (1985)........................................................................................ 14

*Brown v. Plata*, 563 U.S. 493 (2011)......................................................................................... 14

*Charleston Housing Authority v. U.S. Dept. of Agriculture*, 419 F.3d 729 (8th Cir. 2005).......... 4

*Com. ex rel. Patterson v. Pennsylvania Bd. of Probation and Parole*, 214 Pa. Super. 532 (1969) .................................................................................................................................................. 11

*Common Cause v. Department of Energy*, 702 F.2d 245 (D.C. Cir. 1983) ................................. 12

*Edelman v. Jordan*, 415 U.S. 651 (1974) ................................................................................. 10

*Edwards v. Arizona*, 451 U.S. 477 (1981) ................................................................................... 6

*Friends of the Earth, Inc. v. Laidlaw Envtl. Serv. (TOC), Inc.*, 528 U.S. 167 (2000) .............. 4, 5

*Gagnon v. Scarpelli*, 411 U.S. 778 (1973)............................................................................ 10, 14

*Hafer v. Melo*, 502 U.S. 21 (1991) .......................................................................................... 14

*JPMorgan Chase Bank, N.A. v. Johnson*, 719 F.3d 1010 (8th Cir. 2013)................................... 10

*Judwin Properties, Inc. v. U.S. Fire Ins. Co.*, 973 F.2d 432 (5th Cir.)......................................... 2

*Lankford v. Sherman*, 451 F.3d 496 (8th Cir. 2006).................................................................... 4

*Morrissey v. Brewer*, 408 U.S. 471 (1972) ................................................................................. 5

*Morrissey*, 408 U.S. .................................................................................................................. 6

*Morrissey*, 408 U.S. at 481 ....................................................................................................... 5

*N.Y. Cty. Lawyers' Ass'n v. State*, 192 Misc.2d (N.Y. Sup. Ct. 2002) ....................................... 11

*Oklahoma v. Tyson Foods, Inc.*, 258 F.R.D. 472 (N.D. Okla. 2009) .......................................... 3

*Papasan v. Allain*, 478 U.S. 265 (1986) .................................................................................. 10

*Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968)......................... 2, 8

*Randolph v. Rodgers*, 253 F.3d 342 (8th Cir. 2001).................................................................. 10

*Richmond v. District Court of Maryland*, 412 Md. 672 (2010)................................................... 13

*Schroeder v. City of New York*, 371 U.S. 208 (1962) .................................................................. 6

*Shafer v. Bowersox*, 329 F.3d 637 (8th Cir. 2003) ...................................................................... 6

*Strutton v. Meade*, 668 F.3d 549 (8th Cir. 2012) .................................................................... 4, 5

*Two Shields v. Wilkinson*, 790 F.3d 791 (8th Cir. 2005) .......................................................... 13

*United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199 (1968) ........................... 5

*United States v. Taylor*, 747 F.3d 516 (8th Cir. 2014).................................................................. 6

*Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989)........................................................ 14

**Statutes**

RSMo. § 217.035 ..................................................................................................................... 10

RSMo. § 600.042.4 .................................................................................................................. 11

RSMo. § 600.042.4(3) (2008)................................................................................................... 11

**Other Authorities**

H.B. 215, 97th Gen. Assemb., 1st Reg. Sess. (Mo. 2013)......................................................... 11

Case 2:17-cv-04149-SRB   Document 202   Filed 11/18/19   Page 3 of 22

**Rules**

Fed. R. Civ. P. 12 ................................................................................................... 2, 3

Fed. R. Civ. P. 19 .............................................................................................. 2, 8, 15

# INTRODUCTION

This is a one-count lawsuit against the Missouri Department of Corrections and its parole board for their unconstitutional parole revocation practices. The Court granted Plaintiffs summary judgment. (Doc. 146). Discovery closed over one year ago. Defendants conceded liability, admitting that they were violated the constitutional rights of the thousands of Missourians on parole, and this Court agreed. All that remains to be resolved is the appropriate remedy for Defendants' violation of the Plaintiff Class' due process rights.

In an attempt to evade a final judgment in this case, Defendants filed an untimely motion to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(7), making no attempt to explain or justify their delay. Defendants' arguments do not warrant dismissal of the case at this point—especially in light of the finding of liability already in the record and the incredible prejudice that would befall the Class were the case dismissed without a final injunctive order.

Defendants attempt to minimize their constitutional obligations and also recast this case as predominantly about the singular issue of state-funded counsel. Defendants is wrong on both counts. They are wrong that their new policies and procedures "go above and beyond constitutional requirements," they are wrong that the new policies and procedures have been adequately implemented, and they are wrong that Plaintiffs are focused on the issue of state-funded counsel over all other critical due process issues which are relevant to each and every Class member.

Plaintiffs are entitled to the relief they seek:

(1) An order declaring that Defendants' policies, practices, and conduct described in the Complaint violate the Plaintiff Class' rights under the Fourteenth Amendment to the United States Constitution;

(2) An order permanently enjoining Defendants, their agents, employees, and all persons under their control from subjecting the Plaintiff Class from the unlawful policies, practices, and conduct described in the Complaint;

(3) Retaining jurisdiction of the case until such time as Defendants have fully complied with all orders of the Court, and there is reasonable assurance that the Defendants will continue to comply in the future with these orders;

(4) Plaintiffs reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988; and

(5) Such other and further relief as the Court deems just and proper.

Doc. 23 at 37-38. For the reasons discussed below, Defendants' motion should be denied.

## ARGUMENT

### 1. <u>Defendants' Motion Should Be Denied Because it is Untimely</u>

This Court should deny Defendants' Motion outright because it is untimely. In the eleventh hour, Defendants move to dismiss this lawsuit pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(7). The Federal Rules state that any motion to dismiss pursuant to 12(b)(1) or 12(b)(7) "must be made before pleading if a responsive pleading is allowed." FED. R. CIV. P. 12(b). Although Rule 12(h)(2) expands the timeframe within which a party can move to dismiss for failure to join a person required by Rule 19(b) (the basis for Defendants' 12(b)(7) motion here), it still requires that such a defense be raised at trial—before liability is determined. FED. R. CIV. P. 12(h)(2)(C). Here, liability was determined nearly a year ago.

The United States Supreme Court has said that if a claim is litigated to judgment before the objection to the absence of "indispensable" parties is raised, the balancing test under FED. R. CIV. P. 19(b) strongly disfavors dismissal. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968) ("*Provident*"). In *Provident*, the defendant did not object to the absence of indispensable parties until after the plaintiff obtained a judgment. 390 U.S. at 106. The Supreme Court held that because the defendant failed to raise the objection prior to judgment "it is quite proper to consider [the objection to failure to join indispensable parties] foreclosed." *Provident*, 390 U.S. at 110; *cf. Judwin Properties, Inc. v. U.S. Fire Ins. Co.*, 973 F.2d 432, 434-35 (5th Cir.)

(motion to dismiss for lack of subject matter jurisdiction due to an absent indispensable party was impermissibly untimely when not raised until after summary judgment was granted, despite the fact that it was known and could have been raised at the pleading stage); *see also Oklahoma v. Tyson Foods, Inc.*, 258 F.R.D. 472, 483 (N.D. Okla. 2009) ("The Advisory Committee on the Federal Rules of Civil Procedure notes…that undue delay in filing a Rule 19 motion can properly be counted against a party seeking dismissal 'when the moving party is seeking dismissal in order to protect himself against a later suit by the absent person (subdivision (a)(2)(ii)), and is not seeking vicariously to protect the absent person against a prejudicial judgment (subdivision(a)(2)(i)).'") (internal citation omitted).

Here, Defendants never argued the absence of an indispensable party at the pleading stage, despite many opportunities and filings. Defendants did not assert absence of an indispensable party as a defense in their first motion to dismiss filed over two years ago. *See* Doc. 25.[1] They did not allege it as an affirmative defense. *See* Doc. 51. Defendants did not raise it in response to Plaintiffs' motion for summary judgment or file their own summary judgment motion raising the argument. *See* Doc. 140. They never filed a motion under FED. R. CIV. P. 12(c) for failure to join an indispensable party, nor did they ever move to join the Missouri Public Defender Commission as a defendant under FED. R. CIV. P. 14. In sum: Defendants had countless opportunities to raise this argument at the pleading stage and they did not do so.

Instead, the very first time Defendants argued that an indispensable party was absent from this lawsuit was in their recent, second motion to dismiss—filed over 800 days after the lawsuit

---

[1] One of the arguments raised in Defendants' first motion to dismiss was that Plaintiffs lacked standing because Defendants purportedly did not have authority to provide counsel to alleged parole violators. Doc. 25 at 4. The Court rejected this and Defendants' other arguments. *See, e.g.*, Doc. 50 at 6. Notably, Defendants did not argue at that time that the Missouri Public Defender Commission should be a named defendant. *See* Doc. 25, 49.

3

was initiated, well after the close of pleadings in the case, and, most importantly, 247 days after this court granted summary judgment in Plaintiffs' favor. Defendants' Motion is severely untimely, and they offer no explanation as to why they did not raise this argument earlier. Far from moving to dismiss so as to protect any purported interests of the Missouri Public Defender Commission, Defendants have filed their second motion to dismiss in a last-ditch effort to evade a final injunctive order in this case. Their extreme delay in filing alone is grounds for denying the Motion.

## 2. Defendants' Voluntary Policy Changes Do Not Warrant Dismissal—Especially Because Those Policies Fail to Address or Cure All Constitutional Deficiencies

If the Court does not deny the Motion as untimely, it should deny it based on the merits. Defendants' voluntary change in policy is not sufficient to moot Plaintiffs' claims in this case. The remedial steps taken by Defendants since summary judgment was granted do not address or resolve all the constitutional violations found by this Court, and there is no guarantee that such violations "could not reasonably be expected to recur" in the future. Indeed, Plaintiffs plan to present evidence at the upcoming evidentiary hearing that the constitutional violations complained of in this case persist to this day. The Motion to Dismiss pursuant to Rule 12(b)(1) should therefore be denied.

"Defendants who argue mootness due to changed circumstances based on their own behavior face a heavy burden." *Charleston Housing Authority v. U.S. Dept. of Agriculture*, 419 F.3d 729, 740 (8th Cir. 2005); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Serv. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("A case might become moot if subsequent events made it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur.") (emphasis added); *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006) (State did not meet "heavy burden" to show mootness by submitting amended Medicaid plan, where it could reinstate

4

a Medicaid plan that uses federal funding); *Strutton v. Meade*, 668 F.3d 549, 556 (8th Cir. 2012) (defendants did not meet "heavy burden" to show mootness because although they changed treatment program options in the face of budge limitations and staff shortages, they did not provide evidence that the conditions "could not reasonably be expected to recur" in the future). The burden of showing that the challenged conduct is unlikely to recur rests on the party asserting mootness. *Friends of the Earth*, 528 U.S. at 170; *Strutton*, 668 F.3d at 556; *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968).

A.  Defendants' new policies do not cure the constitutional deficiencies in Missouri's parole revocation process.

Defendants have not met their "heavy burden" here. Among the exhibits to Defendants' Motion are a number of written policies and procedures (Doc. 194-1, 194-2, 194-6, 194-7, 194-8, 194-9, 194-10, 194-11, 194-13), a notice of rights form (Doc. 194-3), a screening for counsel instrument (Doc. 194-4), and hearing waiver forms (Doc. 194-5, 194-12). These policies do not address all the constitutional deficiencies in Defendants' parole revocation process. For example, the new policies require that parolees be advised of the violations they are charged with (Doc. 194 at 8), but do not require that parolees be apprised of the evidentiary basis for any alleged violations. Yet Supreme Court precedent is very clear that parolees are entitled to disclosure of the evidence against them. *Morrissey v. Brewer*, 408 U.S. 471, 485-89 (1972).

As another example of the continued constitutional deficiencies, Defendants' notice of rights form (Doc. 194-3) does not adequately inform parolees of their rights during the revocation process.[2] Defendants are simply wrong that they are not required to inform parolees of their rights during the revocation process as a matter of due process. It is critical to fundamental fairness and

---

[2] Plaintiffs also intend to present evidence at the December 16 hearing that Class members have not been provided the notice of rights form.

due process that parolees be adequately informed of their rights during the revocation process. *See Morrissey*, 408 U.S. at 481 ("due process is flexible and calls for such procedural protections as the particular situation demands") and 484 (discussing society's interest in treating parolee with basic fairness); *Schroeder v. City of New York*, 371 U.S. 208, 212 (1962) ("the requirement that parties be notified of proceedings affecting their legally protected interests is obviously a vital corolary [sic] to one of the most fundamental requisites of due process—the right to be heard"); *United States v. Taylor*, 747 F.3d 516, 519 (8th Cir. 2014) (waivers must be knowingly and voluntarily made); *Shafer v. Bowersox*, 329 F.3d 637, 650 (8th Cir. 2003) (quoting *Edwards v. Arizona*, 451 U.S. 477, 482 (1981)) (same). Defendants' notice of rights form has at least four fatal flaws:

> (1) it does not make clear that class members have the right to *state-funded* counsel;
>
> (2) it does not inform class members of their right to appeal;
>
> (3) overall, the notice form is not written in plain language or in a manner accessible to the expected reading comprehension level of the average parole, *see* Muhammad Expert Report (Doc. 130-22) at 4, n1; Doc 130 at ¶¶ 81-82;[3] and
>
> (4) it does not indicate whether or when class members will receive "a written statement by the factfinders as to the evidence relied on and reasons for revoking parole" as due process requires, *Morrissey*, 408 U.S. at 485-89.

In fact, Defendants' new policies wholly fail to address the requirement that parolees receive "a written statement by the factfinders as to the evidence relied on and reasons for revoking parole" as required by *Morrissey*. Defendants apparently plan to continue to provide notice of revocation decisions on boilerplate forms devoid of substance. *See, e.g.,* Doc. 130 at ¶¶ 73-74. Defendants' new policies—even if adhered to religiously—simply do not cure the due process

---

[3] All of the uncontroverted material facts cited in Plaintiffs' motion for summary judgment (Doc. 129-130) are admitted because Defendants' response (Doc. 140) did not properly address any assertions of fact as required by FED. R. CIV. P. 56(c). *See* Doc. 146, 146.

deficiencies already found by this Court to exist systemically in Missouri's parole revocation system.

      B. <u>Defendants have not demonstrated their revised revocation process is constitutionally adequate.</u>

Yet even if Defendants' new policies brought them into compliance with *Gagnon* and *Morrissey*, Defendants provide no evidence that they are actually complying with these new policies or with what due process otherwise requires.[4] For example, Defendants fail to address the fact that Class members are routinely pressured to waive their rights during the revocation process. *See* Doc. 145 at 1; Doc. 130 at ¶¶ 50-52. They provide no evidence to back up their conclusory representation that "Missouri's new policies provide that waivers of parole hearings will be knowing and voluntary," Doc. 194 at 11. Indeed, because of the issues with the notice form and other forms Defendants now utilize, this is far from likely. Furthermore, it is undisputed that revocation hearings were not being conducted within a reasonable time after a parolee is taken into custody. *See* Doc. 145 at 2; Doc. 130 at ¶¶ 5, 48-49. Defendants provide no evidence that this is no longer the case.

The changes Defendants did make, while positive in some respects, were voluntary. Just as Defendants changed their policies this year, they could change their policies again. They have not demonstrated that the constitutional violations found by the Court when it granted summary judgment "could not reasonably be expected to recur" in the future. They have thus failed to meet their "heavy burden" to warrant dismissal on mootness grounds, and the Motion should be denied.

    **3.**   **<u>The Missouri Public Defender Commission is Not an Indispensable Party</u>**

---

[4] To the contrary, Plaintiffs' counsel have received numerous complaints from Class members who have gone through the revocation process more recently and had their due process rights violated. The violations describe the span the range of deficiencies initially identified in the Plaintiffs' complaint, and ultimately found by this Court. Moreover, the complaints are consistent, indicating that the problems are not one-offs or missteps by a single employee.

7

Defendants also move to dismiss the case under Rule 12(b)(7) on the theory that the Missouri Public Defender Commission (the "Commission") is an indispensable party. It is not.

Rule 19(a) defines a person as an indispensable party if "in that person's absence, the court cannot accord complete relief among existing parties," or if "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may" impair or impede their ability to protect that interest, or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." FED. R. CIV. P. 19(a)(1). Whether a person is truly indispensable "can only be determined in the context of particular litigation." *Provident*, 390 U.S. at 118.

The Commission has not claimed an interest relating to the subject of this lawsuit. To the contrary, the Commission through its Director Michael Barrett has expressly conveyed to Defendants that it does not have any interest in this litigation. *See* Doc. 194-15 (Commission Director telling MDOC Director Precythe that the Missouri State Public Defender will not provide legal services to indigent alleged parole violators); Doc. 194-16, 194-17, 194-18. Thus, the Commission is not a necessary party under Rule 19(a)(1)(B).[5]

Nor is the Commission a necessary party under Rule 19(a)(1)(A), because this Court can accord complete relief among the existing parties. This case has always been about how the Missouri Department of Corrections and Missouri parole board systemically deny basic due process rights to alleged parole violators, as made clear by the very first allegation in the lawsuit:

> This is a civil rights class action complaint filed on behalf of men and women in custody, or under supervision, of the Missouri Department of Corrections ("MDOC"), and who are at risk of imprisonment without adequate due process as a result of unconstitutional practices, procedures,

---

[5] Even if the Commission has an interest in this lawsuit, resolving the case in their absence would not impair or impede their ability to protect that interest. Nor would proceeding without the Commission leave Defendants "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." FED. R. CIV. P. 19(a)(1)(B)(ii).

8

and customs of both the MDOC and its Division of Probation and Parole ("Parole Board") with respect to parole revocation proceedings.

Doc. 23 at ¶1. At issue are Defendants' policies, procedures, and customs. Defendants supervise the Class on parole, cite them for alleged parole violations, and are charged with determining whether Class members have violated the terms of their parole supervision and, if so, whether their parole should be revoked. Defendants issue warrants to arrest Class members for alleged parole violations. In many instances, Defendants reincarcerate Class members for violating their conditions of parole. And it is uncontested that Defendants conduct this parole revocation scheme in an unconstitutional manner in at least six ways:

(1) systemically violating Class Members' due process rights by failing to provide adequate notice of alleged parole violations and the basis for revocation decisions (*id.* at ¶¶42, 67-76);

(2) routinely failing to advise Class Members of their rights during revocation proceedings (*id.* at ¶¶58-64, 81-85);

(3) denying the Class due process by securing waivers of preliminary hearings and final revocation hearings that are not knowing, voluntary and intelligent (*id.* at ¶¶16, 32-42, 50-64, 91);

(4) not screening for or providing State-funded counsel in compliance with *Gagnon v. Scarpelli*, 411 U.S. 778 (1973) (see, e.g., Doc. 130 at ¶¶32-40);

(5) violating the Class' due process rights by refusing to disclose to a parolee evidence against them and denying them the opportunity to present witnesses or confront adverse witnesses at both the preliminary hearing and revocation hearing (*id.* at ¶¶11, 22-23, 45-46, 88-90); and

(6) failing to conduct revocation hearings within a reasonable time after a parolee is taken into custody, in violation of the Fourteenth Amendment (*id.* at ¶¶5, 48-49).

These constitutional violations are the direct result of actions and inactions of the named Defendants. The Court can enter an order directing Defendants to take corrective action to remedy these constitutional harms; the Missouri Public Defender Commission need not be involved to accord full relief here.

9

A. <u>The Commission is not a necessary party because Defendants have the authority and the obligation to provide state-funded counsel to eligible parolees.</u>

Although the due process violations are numerous, the one aspect of the case that Defendants' 12(b)(7) Motion focuses on is the provision of counsel to eligible parolees pursuant to *Gagnon v. Scarpelli*, 411 U.S. 778 (1973). Defendants are correct that many alleged parole violators need and are entitled to state-funded counsel, and that Defendants uniformly fail to screen and refuse to provide attorneys to them. *See* Doc. 194 at 14. But they are wrong when they insist that they have no authority to provide attorneys for indigent parolees.

The Court could order Defendants to enter into contracts with private attorneys to provide legal services to qualifying parolees. The Director of MDOC, who is a named defendant, has authority to enter into a contract to secure legal representation for alleged parole violators. Section 217.035 grants Director Precythe broad authority to "[p]rocure either through the division of purchasing or by other means authorized by law, supplies, material, equipment or *contractual services* for the department and each of its divisions." RSMo. § 217.035(4) (emphasis added). And this Court can order prospective equitable relief against the defendants to remedy an ongoing constitutional violation even if that prospective relief may require the State to spend money. *See Randolph v. Rodgers*, 253 F.3d 342, 348 (8th Cir. 2001) (a court can order a State and its officers to comply with constitutional obligations even where injunctive relief will have a "substantial ancillary effect on the state treasury"); *see also Edelman v. Jordan*, 415 U.S. 651, 662, 668 (1974); *Papasan v. Allain*, 478 U.S. 265, 278 (1986).

Defendants argue that Section 600.042.4(4) grants exclusive authority to provide or appoint attorneys for indigent parolees. Both Plaintiffs and the Commission strongly disagree. *See, e.g.,* Doc. 194-15. A "basic rule of statutory construction is to give effect to the intent of the General Assembly." *JPMorgan Chase Bank, N.A. v. Johnson*, 719 F.3d 1010, 1015 (8th Cir. 2013) (internal

10

quotation omitted). Where the legislature has the ability to include qualifying language but chooses not to do so in a statute, courts should "infer the omission was deliberate and evidences a different legislative intent." *Id*. Section 600.042—the provision of Missouri law specifying the powers and duties of the Commission's Director—formerly required the Office of the Public Defender to provide legal services to indigent individuals "detained or charged with a violation of probation or parole." RSMo. § 600.042.4(3) (2008). The Missouri General Assembly deleted that express reference to parole violations from § 600.042 with the passage of H.B. 215 in 2013. *See* H.B. 215, 97th Gen. Assemb., 1st Reg. Sess. (Mo. 2013); *see also* Doc. 194-15 at n1. The current § 600.042 is now completely silent about whether the Office of the Public Defender must or may represent alleged parole violators. *See* RSMo. § 600.042.4. In this way, then, this case is easily distinguishable from *Com. ex rel. Patterson v. Pennsylvania Bd. of Probation and Parole*, where the state's Public Defender Act, like Missouri's *former* law, expressly stated: "the Public Defender shall be responsible for furnishing legal counsel…to any person who for lack of sufficient funds, is unable to obtain legal counsel (at)…probation and parole proceedings and revocation thereof." 214 Pa. Super. 532, 533 (1969).[6] The Court should interpret the Missouri legislature's amendment to Section 600.042 as a deliberate decision by the legislature to remove parole revocations from the Commission's purview. The Commission is not statutorily obligated to provide legal services to alleged parole violators. *See* Doc. 194-15.[7]

---

[6] *N.Y. Cty. Lawyers' Ass'n v. State*, 192 Misc.2d, 427-28 (N.Y. Sup. Ct. 2002), is similarly distinguishable because there "the New York State Legislature…passed on the responsibility of creating an assigned counsel plan to the individual counties, (see County Law § 7224) and the expense of funding it to its political subdivisions."

[7] Indeed, even prior to deletion of this language from statute, Defendants were not providing counsel as required by *Gagnon*. *See* Doc. 130 at ¶ 38.

Nor could they do so, given their current and well-known workload issues. *Id*. Furthermore, Defendants cite no authority that indicates the Commission is the exclusive means for providing representation to indigent parolees facing revocation. Indeed, Defendants are better equipped to provide counsel to qualifying parolees given their system already in place for supervising Class members and the fact that their budget far surpasses that of the Commission, to wit:

| | FY 2018 Appropriations[8] | FY 2019 Appropriations[9] |
|---|---|---|
| **Corrections** | $724,569,448 | $775,618,158 |
| **Public Defender** | $45,608,524 | $49,126,083 |

What authority Defendants do cite is distinguishable. For example, in *Ashley v. U.S. Dept. of Interior*, 408 F.3d 997 (8th Cir. 2005), members of an Indian tribe sought an order compelling their Tribe to spend certain trust payments in compliance with a federal law. The Eighth Circuit affirmed dismissal on the basis that the plaintiffs lacked standing because they named the federal government, not their Tribe, as a defendant and the government had no authority over how the Tribe spend the trust payments in question. The court thus could not, in its opinion, issue an order likely to remedy the injuries complained of. 408 F.3d at 999-1000. As the Eighth Circuit noted, "[t]he underlying difficulty for the plaintiffs is that they 'seek to change the defendant's [*i.e.*, the government's] behavior *only as a means* to alter the conduct of a third party [the Tribe], not before the court, who is the direct source of the plaintiff['s] injury." *Id*. at 1003, *quoting Common Cause v. Department of Energy*, 702 F.2d 245, 251 (D.C. Cir. 1983). Here, it is not the Commission's or individual public defenders' conduct that Plaintiffs seek to alter. The Commission is not the direct

---

[8] *See* Fiscal Year 2019 Budget Summary, available at https://oa.mo.gov/sites/default/files/FY_2019_Budget_Summary.pdf, last accessed Nov. 14, 2019.

[9] *See* Fiscal Year 2020 Budget Summary, available at https://oa.mo.gov/sites/default/files/FY_2020_Budget_Summary_combined.pdf, last accessed Nov. 14, 2019.

12

source of Plaintiffs' constitutional injuries, Defendants are. Indeed, the Court has already concluded as much. *See* Doc. 50 and 146. *Ashley* does not weigh in favor of dismissal here.

In addition to being non-binding, *Richmond v. District Court of Maryland*, 412 Md. 672 (2010), is also distinguishable on the merits. There, the Maryland Court of Appeals ruled that the public defender was a necessary party to a case seeking "a declaratory judgment that they and the class of indigent persons they represent have the right to be represented by the Public Defender during an initial appearance before a District Court Commissioner." 412 Md. at 672. Here, Plaintiffs do not seek a declaratory judgment that they have the right to be represented by a public defender at any point during a criminal proceeding. The instant claims are of an entirely different character, and relate to Defendants' actions and inactions, not to the conduct of a public defender.

This case is also very different from the set of circumstances in *Two Shields v. Wilkinson*, 790 F.3d 791 (8th Cir. 2005). There, most of the plaintiffs' claims alleged as an element a breach of fiduciary duty by the United States, who was not named as a defendant. When the defendants filed a 12(b)(7) motion to dismiss, the United States filed an amicus brief asserting numerous interests in the subject matter of the action and arguing that the case should be dismissed because it could not be joined. 790 F.3d at 794-95. Here, as discussed above, the Commission has not expressed any interest in the subject matter of this lawsuit. And here, Plaintiffs' claims do not hinge on any conduct by the Commission. None of Plaintiffs' claims require as an element any wrongdoing by the Commission. Plaintiffs have not asked this Court to render a decision on the legality of any actions or inactions of the Commission. And as stated at numerous points throughout this brief, this Court has already assessed liability against the defendants on Plaintiffs' due process claim. Doc. 146.

In truth, Defendants not only have the authority to provide counsel to eligible parolees, they have the obligation to do so:

> [T]he decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system. Although the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent probationers or parolees.

*Gagnon*, 411 U.S. at 790. The State can and should remedy the constitutional violations here. Defendants are agents of the State of Missouri. They are named in their official capacities. Therefore, this lawsuit is no different from a suit against the State itself. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (internal citations omitted); *see also Brandon v. Holt*, 469 U.S. 464, 471 (1985); *Hafer v. Melo*, 502 U.S. 21, 25 (1991). There is no need to join another state agency in order to accord full relief here—especially where Defendants can enter into a contract or contracts for the provision of necessary legal services, at the State's expense.

    B.   <u>Even if the Commission were the exclusive means of providing legal services to indigent alleged parole violators, they are not a necessary party because this court can "accord complete relief" without them.</u>

Even if Defendants do not have authority to provide counsel to Class members outside of the Office of Public Defender, there are other possible paths of equitable relief that this Court could impose to address Plaintiffs' injuries, some of which were noted previously by the Court. *See* Doc. 50 at 8, n4. For example, Defendants could release (and not revoke) Class members who are eligible for state-funded counsel under *Gagnon*. *See, e.g.*, *Brown v. Plata*, 563 U.S. 493, 511, 545

(2011) (affirming injunctive relief giving California choice of spending money on more prisons or releasing prisoners).

The Commission does not conduct parole revocation hearings; Defendants do. And it is Defendants' responsibility to ensure that parolees are afforded their full array of due process rights throughout the parole revocation process. As there is no dispute of Defendants' ongoing constitutional violations, this Court should enter a final declaratory and injunctive order compelling them to remedy the system.

### 4. **Even if the Court finds that the Commission is a Necessary Party, It Should Not Dismiss the Case**

If the Court disagrees with Plaintiffs' contention that the Commission is not an indispensable party, it should still permit the action to proceed among the existing parties. Under Rule 19(b), when joinder of a necessary party is not feasible, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." FED. R. CIV. P. 19(b). The Rules further direct courts to consider the following non-exhaustive factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
>> (A) protective provisions in the judgment;
>>
>> (B) shaping the relief; or
>>
>> (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id*. As discussed above, Plaintiffs do not seek a judgment commanding the Commission to provide attorneys to eligible alleged parole violators. They seek a judgment directing Defendants to operate parole revocation procedures in a manner that complies with due process. An adequate final declaratory and injunctive order can easily be crafted that does not prejudice the Commission or Missouri's public defenders.

Defendants argue that the Class has an adequate remedy if the action were dismissed for nonjoinder: "Appointment of counsel in specific cases could be addressed through individual actions to enforce against the Commission." Doc. 194 at 16. This argument is shockingly off-base. Setting aside that the bulk of the constitutional violations have nothing to do with the provision of counsel, Defendants expect each of the thousands of Missourians who are detained or incarcerated on parole violations every year—many of whom have disabilities and are indigent—to file their own separate lawsuits against the Commission in order to obtain the assistance of counsel. Such a proposal flies in the face of judicial economy. And, unfortunately, those who qualify for state-funded counsel under *Gagnon* are the very people who will not be able to advocate for themselves in this way, whether because of their indigency status, mental health status, or disability. This "alternative remedy" presumably also means that, while the individual lawsuit weaves its way through the court system (assuming it is well-pled and not dismissed at the pleading stage), the parolee is detained in jail or prison. This scenario is far from a just and adequate remedy.

To dismiss this case in its entirety at this point—a certified class action on behalf of over 15,000 Class members that has already won summary judgment, after the expenditure of significant time and resources—would be gravely prejudicial to the Class. To do so would almost certainly ensure that thousands of parolees would continue to have their due process rights violated on a regular basis—many incarcerated under a revocation process that, despite Defendants'

voluntary policy changes, continues to operate far below the threshold required by the United States Constitution. The Commission is not a required party. But even if it was, Defendants' motion should still be denied because joinder is not feasible and the equities weigh heavily in favor of denying Defendants' Motion.[10]

Respectfully submitted,

RODERICK AND SOLANGE MACARTHUR
JUSTICE CENTER

By: /s/ Amy E. Breihan
Amy E. Breihan, # 65499
Megan G. Crane, #71624
3115 South Grand Blvd., Suite 300
St. Louis, MO 63118
Phone: (314) 254-8540
Fax: (314) 254-8547
amy.breihan@macarthurjustice.org
megan.crane@macarthurjustice.org

Locke E. Bowman*
Sheila A. Bedi*
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, IL 60611
Phone: (312) 503-1271
l-bowman@law.northwestern.edu
sheila.bedi@law.northwestern.edu
*Admitted Pro Hac Vice

*Attorneys for Plaintiffs*

Dated: November 18, 2019

---

[10] Alternatively, If Court finds that Commission truly is a necessary party, Plaintiffs ask for leave to join the Commission as a defendant for purposes of remedy only.

17

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of November, 2019, a true and correct copy of the foregoing was electronically filed using the Court's online case filing system, which will send notice to all counsel of record.

By: /s/ Amy E. Breihan
One of Plaintiffs' Attorneys