IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| STEPHANIE GASCA, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>ANNE PRECYTHE, et al., )<br>)<br>Defendants. ) | Case No. 2:17-cv-04149-SRB |

**DEFENDANTS' REPLY TO PLAINTIFFS' SUGGESTIONS IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Defendants, through counsel, reply to Plaintiffs' Suggestions in Opposition to Defendants' Motion to Dismiss.

**I. Defendants Motion Is Not Untimely**

Plaintiffs do not challenge the timeliness of the motion as it relates to mootness. And they cannot. When an action is moot, even on appeal, a federal court no longer has jurisdiction over it. *Ringo v. Lombardi*, 677 F.3d 793, 796 (8th Cir. 2012). In such cases, the action should be dismissed. *See id*. at 799.

Plaintiffs do challenge the timeliness of Defendants' argument that they failed to join an indispensable party. Sugg. in Opp. at 2-4. But that is an issue that may be raised at any time. *Mescalero Apache Tribe v. New Mexico*, 131 F.3d 1379, 1383 (10th Cir.1997); *Wyandotte Nation v. Unified Gov't of Wyandotte County/Kansas City, Kan.*, 222 F.R.D. 490, 500 (D. Kan. 2004). The issue of whether a party is indispensable is not waivable, and a court has a duty to raise the issue *sua sponte*. *Diagnostic Unit Inmate Council v. Motion Picture Ass'n*, 953 F.2d 376, 378–79 (8th Cir. 1992).

The cases cited by Plaintiffs, *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S.

102 (1968), and *Judwin Properties, Inc. v. U.S. Fire Ins. Co.*, 973 F.2d 432 (5th Cir. 1992), are inapplicable and do not support their argument that Defendants' motion is untimely.  In both cases, the issue of failure to join an indispensable party was raised for the first time on appeal.  *See Provident*, 390 U.S. at 109; *Judwin*, 973 F.2d at 433-34.  That is not the case here.

Another case cited by Plaintiffs, *Oklahoma v. Tyson Foods, Inc.*, 258 F.R.D. 472 (N.D. Okla. 2009), actually supports the position that the motion here is not untimely.  In *Tyson Foods*, the court noted that undue delay in making a motion under Rule 19 may be counted against the party when the moving party is trying to protect itself against a later suit by the absent party.  *Id.* at 483.  The court found this factor did not apply and concluded that the motion was timely.  *Id.*  Similarly, in this case, Defendants are not trying to protect themselves from a suit by the absent party.  Rather, they are trying to uphold Missouri law providing that it is the Missouri Public Defender Commission (Commission) that has the obligation to provide counsel to indigent parties with a constitutional right to counsel.

Plaintiffs also argue that "Defendants had countless opportunities to raise this argument at the pleading stage and they did not do so." Sugg. in Opp. at 3.  While Defendants did not articulate this issue in terms of Rule 19(b), they did argue in their first Motion to Dismiss (Doc. 25) and their Answer (Doc. 51) that defendants have no authority to appoint counsel to represent Plaintiffs.  Although Defendants argued this issue at the pleading stage as a matter of standing and subject matter jurisdiction, the same argument has been consistently made: Defendants cannot fulfill all of Plaintiffs' demands.  And while the Court did deny Defendants' first Motion to Dismiss, it did not reject the possibility that Defendants lack the authority to provide counsel. Doc. 50 at 8.

As this case has unfolded, the absence of the Commission has come into focus as a barrier to adequate redress.  The Advisory Committee notes on Rule 19 state that, "[T]he relationship of

2

an absent person to the action, and the practical effects of an adjudication upon him and others, may not be sufficiently revealed at the pleading stage; in such a case it would be appropriate to defer decision until the action was further advanced." Fed. R. Civ. P. 19(b) advisory committee's note to 1966 amendment. *See also Provident*, 390 U.S. at 743 ("a court does not know whether a particular person is 'indispensable' until it had examined the situation to determine whether it can proceed without him"). While the Court considered the likelihood of adequate redress when it considered this issue in its earlier order, the current circumstances require reexamination using the factors in Rule 19(b).

**II. Defendants' Policy Changes Have Corrected Any Constitutional Deficiencies**

    **A. <u>Deficiencies Not Likely to Recur.</u>** There is no dispute that Defendants have changed their parole policies. This is not a case of the Defendants merely submitting a new process for approval (as in *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006)) or making changes that could not be maintained if previous budgetary and staffing restrictions recur (as in *Strutton v. Meade*, 668 F.3d 549, 556 (8th Cir. 2012)). Rather, the changes made in Defendants' parole polices have been implemented and there are no previous budgetary or staffing issues the recurrence of which could result in pressure on Defendants to return to their previous policies.

    **B. <u>New Policies Address and Correct All Constitutional Deficiencies Alleged by Plaintiffs.</u>** Despite the new policies, Plaintiffs argue that they are insufficient. For example, Plaintiffs assert that the new policies "do not require that parolees be apprised of the evidentiary basis for any alleged violations." Sugg. in Opp. at 5. On the contrary, alleged parole violators are to be provided with a copy of the violation report, which sets out the particulars of the alleged violations, including the date, time, place, and basis of any arrest on a new charge, the circumstances of each violation, and identification of outside sources of information. Procedure

No. P3-8.3,III,B.1 (Ex. F to the Motion to Dismiss, at 10-11).

Further, Plaintiffs assert that the Notice of Rights form (Ex. C. to Motion to Dismiss) is deficient because it does not (1) make clear that class members have a right to state-funded counsel; (2) inform class members of their right to appeal; (3) provide information in a manner accessible to the average parolee; and (4) indicate that class members will receive a written statement from the factfinders as to the evidence relied on and reasons for revoking parole. Sugg. in Opp. at 6.

Responding in order: (1) The Notice does make it clear to class members that if they cannot afford counsel, they may ask the parole officer for counsel who will then determine if they are eligible. Ex. C, § 1, 3rd Para. (2) Although the form does not discuss the right to appeal, this information is provided at the time of the decision regarding whether parole is being revoked. Procedure No. P6-6.1, III.G (Ex. S, attached to this Reply, at pp. 4-5). (3) Although critical of the language used, Plaintiffs point out no particular areas where the Notice of Rights form is not easily comprehensible. A review of the form (Ex. C) reveals it to be understandable. (4) Alleged parole violators are informed that they will get a written statement of decision, including the evidence relied on and the reasons for revoking parole. Ex. C, § III, last Para. And, in any event, this fourth point is not an issue raised in the Amended Complaint (Doc. No. 23). Neither the right to a written statement nor notice of such a right is put at issue. In ¶ 70 (p. 18), there is a remark that the written decision is "generally a one-page document with few details or reasons for the determination", but no claim is made about that.

Plaintiffs also assert issues with the length of time between taking a parolee into custody and the revocation hearing. Sugg. in Opp. at 7. Yet, parolees are to be interviewed within five business days after the Parole Officer learns of an arrest. Procedure No. P3-8.2,III.A.1 (Ex. B to the Motion to Dismiss, at p. 2). If the parolee does not waive a preliminary hearing, it is to be held

4

within ten business days of the initial interview. Procedure No. P3-9.1, III.E.1 (Ex. T, attached to this Reply, at p. 6). Revocation hearings are held within 30 business days from the parolees return to Department of Corrections custody. Procedure No. P6-8.1, III.D.1 (Ex. K to the Motion to Dismiss, at 9). These are not unreasonable time frames.

        **C.** **<u>Alleged Evidence of Failure to Follow the New Policies Is Irrelevant to Plaitniffs' Facial Challenge to the Parole System.</u>** Plaintiffs challenge is to Missouri's parole system. That this is a facial challenge to Missouri's parole policies and procedures is evident from the Order granting class certification (Doc. No. 132, at 2-3), which states "Defendants' parole revocation policies and procedures 'apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" (Quoting from Fed. R. Civ. P. 23(b)(2).) Because this is a facial challenge, Plaintiffs' allegations that some class members continue to complain of failures to follow the new polices are not relevant. To the extent they have individual issues regarding compliance with the new policies, these claims should be resolved separately in another action.

**III. The Public Defender Commission Is an Indispensable Party**

        **A.** **<u>Complete Relief Cannot Be Accorded Without the Commission.</u>** Plaintiffs claim that attorneys must be provided to alleged parole violators in certain circumstances. But Defendants have no authority to do so. Plaintiffs argue that the Department of Corrections has the authority to provide counsel because the Director has the authority to enter into contracts under § 217.035(4), RSMo. Sugg. in Opp. at 10. By this, they seem to suggest that any state agency with the statutory authority to enter into contracts can be sued to enforce any constitutional right when the remedial action required is attainable by contract. But that is not true, and would create havoc. In Missouri, an administrative agency's authority is limited to that granted by statute, and

5

such agencies may act only within that authority. *State ex rel. Missouri Pub. Def. Comm'n v. Waters*, 370 S.W.3d 592, 598–99 (Mo. banc 2012). Defendants have no statutory authority to provide counsel. Under Missouri law, that is the responsibility of the Public Defender Commission.[1] *Waters*, 370 S.W.3d at 599 (noting that the Public Defender is charged with representing indigent defendants and "is assigned various responsibilities and vested with corresponding powers necessary and convenient to fulfilling those responsibilities"). The Commission cannot avoid its responsibility to provide counsel even though it may claim a lack of adequate resources. § 600.062, RSMo ("neither the director nor the commission shall have the authority to limit the availability of [its staff] to accept cases based on a determination that the office has exceeded a caseload standard").

Plaintiffs cite *Randolph v. Rodgers*, 253 F.3d 342 (8th Cir. 2001) for the proposition that the Court can order injunctive relief despite the potential monetary cost of that relief. Sugg. in Opp. at 10. Defendants do not dispute this point, but note that the court in *Randolph* also held that injunctive relief should not be entered in instances in which it would be impossible for the defendants to execute. *Id.* at 345-46. Here, it would be impossible for Defendants to comply with an injunction requiring them to provide counsel to alleged parole violators because they have no legal authority to do so.

Plaintiffs assert that the Commission is no longer tasked with representing alleged parole violators because of the removal in 2013 of the part of the statute providing that the Commission

---

[1] Defendants understand that the Commission, as a state entity cannot itself be joined as a defendant in this suit because of Eleventh Amendment immunity. But, for purposes of injunctive relief, the members of the Commission, in their official capacities, can be defendants. When Defendants refer to the "Commission" as an indispensable party, they mean that the Commission members, as the entities that can be sued, are indispensable.

6

shall provide representation to eligible persons who are charged with a violation of parole. Sugg. in Opp. at 11. Although the change in the law did reduce the statutory obligations of the Commission, it did not do so as broadly as the Plaintiffs suggest. Section 600.032.4(3), RSMo, formerly required the Commission to provide representation to an eligible person[2] "[w]ho is detained or charged with a violation of probation or parole[.]"[3] This subdivision was amended to state that representation is to be provided to an eligible person "[w]ho is charged with a violation of probation when it has been determined by a judge that the appointment of counsel is necessary to protect the person's due process rights under section 559.036[.]" Section 600.0424(5), which requires the Commission to represent an eligible person "[f]or whom the federal constitution or the state constitution requires the appointment of counsel" was retained in the statute. Thus, rather than requiring the Commission to represent any eligible person charged with a violation of probation or parole, the obligation has been reduced to requiring the representation of only certain persons charged with probation violations and only those eligible parolees who are constitutionally entitled to appointment of counsel. The crux of Plaintiffs' complaint here is that alleged parole violators are constitutionally entitled to appointed counsel in certain circumstances. Under § 600.042.4(5), which is still in the statute, it is the obligation of the Commission to provide counsel in those circumstances.[4]

Plaintiffs argue that the Commission is not an indispensable party because it is not asking

---

[2] "Eligible person" means an indigent person. See § 600.011(10), RSMo.

[3] These amendments can be followed in H.B. 215, 97th Gen. Assemb., 1st Reg. Sess. (Mo. 2013) < https://house.mo.gov/billtracking/bills131/hlrbillspdf/0284S.09T.pdf>.

[4] Given the Commission's responsibility to provide counsel to alleged parole violators, Plaintiffs' reference to the relative appropriations of Corrections and the Commission (Sugg. in Opp. at 12) is irrelevant. Even if it were, the overall appropriations figures are meaningless here without consideration of the responsibilities of each agency and the number of their employees.

7

for anything from the Commission and their claims do not hinge on any conduct of the Commission. Sugg. in Opp. at 13. But Plaintiffs claims do, in fact, hinge on the conduct of the Commission. A large portion of the Amended Complaint is concerned with the absence of appointed counsel for those alleged parole violators who qualify for counsel under *Gagnon v. Scarpelli*, 411 U.S. 778 (1973). Am. Compl. at ¶¶ 74-92 (pp. 19-23). As summarized in ¶ 10 (p. 3), Plaintiffs allege that "[t]he vast majority of parolees in the State of Missouri need and are entitled to appointed counsel to help them navigate these arcane proceedings." Given that only the Commission can provide the counsel sought by Plaintiffs, the Commission is an indispensable party.

Plaintiffs further argue that, because *Gagnon* requires "the State" to provide counsel in certain circumstances, it is Defendants here who are responsible for providing counsel in those circumstances. Sugg. in Opp. at 14. But Defendants here are not "the State". They are officials in one state agency. Even though Defendants may be a part of "the State", they are not the part of "the State" that has the power to provide the relief that Plaintiffs seek and it would be impossible for them to comply with an injunction directing them to provide counsel. Plaintiffs cannot obtain complete relief without that part of "the State" that does have the power to appoint counsel for those Plaintiffs who qualify being joined as a party. Thus, the Commission – the part of "the State" that can provide counsel – is an indispensable party.

Plaintiffs contend that, "[e]ven if Defendants do not have authority to provide counsel . . ., there are other possible paths of equitable relief that this Court could impose to address Plaintiffs' injuries, some of which were noted previously by the Court. See Doc. No. 50 at 8, n4." Sugg. in Opp. at 14. But Plaintiffs complain of lack of counsel. They cannot obtain counsel otherwise than through the Commission. As such, the Commission is an indispensable party for obtaining the

8


relief Plaintiffs seek.

   **B. <u>Joinder of the Commission Is Feasible.</u>** There is no reason the Commission cannot be joined as a party to this case.  Plaintiffs have chosen not to.  Their claims relating to provision of counsel should be dismissed because they continue to decline to do so.

   Even if it were not feasible to join the Commission, a consideration of the factors set out in Fed. R. Civ. P. 19(b) results in the conclusion that Plaintiffs' claims regarding appointment of counsel should be dismissed.

   *The extent to which a judgment rendered in the person's absence might prejudice that person or existing parties.* First, if the Commission is not joined as a party, adjudication related to providing counsel would impair the working relationship between Defendants and the Commission. S*ee Fla. Wildlife Fed'n v. United States Army Corps of Engineers*, 859 F.3d 1306, 1317 (11th Cir. 2017) (where the project at issue involved cooperative interaction between defendant Army Corps of Engineers and absent state water district with overlapping jurisdiction, a decision in the state party's absence would prejudice their working relationship). Second, an order to the Defendants to provide counsel in any case prejudices them because it directs them to do something they cannot do, which could result in further litigation against them.  Finally, an alternative order that alleged parole violators be released if counsel cannot be obtained would prejudice not only the Defendants, whose duty it is to determine whether such persons should be returned to custody, but also the public, who would be endangered by the release of dangerous persons.

   *The extent to which any prejudices could be lessened by or avoided by:  (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures.* Plaintiffs suggest no middle ground between allowing Defendants to continue doing their duty of reviewing alleged

9

parole violators to determine whether they should be returned to custody and directing the release of alleged parole violators when the Commission fails to do its duty of providing counsel when required by *Gagnon*. Any injunctive relief requiring Defendants to provide counsel, or consequences for not doing so, would prejudice Defendants, the Commission, and the public.

*Whether the judgment rendered in the person's absence would be adequate.* *Gagnon* requires appointment of counsel in certain circumstances. Defendants have no authority to appoint counsel. Without the presence of the Commission as a party, no judgment would be adequate. Moreover, adequacy is about more than the enforceability of judgments; it is also about settling disputes by wholes. *Republic of Philippines v. Pimentel*, 553 U.S. 851, 870–71 (2008). If Defendants are ordered to provide counsel and doing so exceeds their authority, further litigation may ensue. If other injunctive relief is fashioned, subsequent litigation against the Commission or its officers may result. Either way, the judgment would not further the public interest in full resolution.

*Whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.* Appointment of counsel in specific cases could be addressed through individual actions to enforce against the Commission. Plaintiffs reject the adequacy of the remedy as too difficult for many alleged parole violators, too long a process, and inconsistent with judicial economy. Sugg. in Opp. at 16. Even if not ideal, however, individual actions by alleged parole violators do provide the means to obtain the relief they seek here. And even if the Court were to conclude this alternative remedy is not adequate, this is only one factor in the consideration.

WHEREFORE, for the reasons stated above and in the Motion to Dismiss, Defendants pray this Court to dismiss the Amended Complaint as moot and for failure to join an indispensable party.

Respectfully submitted,

**ERIC S. SCHMITT**
Attorney General

*/s/ Michael Pritchett*
Michael Pritchett, Mo. Bar No. 33848
Assistant Attorney General
P.O. Box 899
Jefferson City, MO 65102
(573) 751-8864; Fax: (573) 751-9546
Email:michael.pritchett@ago.mo.gov

**ATTORNEYS FOR DEFENDANTS DUSENBERG, FITZWATER, JONES, MCSWAIN, PRECYTHE, RUCKER, WELLS, AND ZAMKUS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of December, 2019, I filed the foregoing electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

| | |
|---|---|
| Sheila A Bedi | Amy E. Breihan |
| Locke E. Bowman | Megan G. Crane |
| Northwestern Pritzker School of Law | Roderick and Solange MacArthur Justice Center |
| 375 East Chicago Avenue | 3115 South Grand Blvd., Suite 300 |
| Chicago, IL 60611 | St. Louis, MO 63118 |

*/s/ Michael Pritchett*
Michael Pritchett
Assistant Attorney General